**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edgar Cherry GANT,**
**Defendant-Appellant.**

No. 82–2168.

United States Court of Appeals,
Fifth Circuit.

Nov. 9, 1982.

1160

Hugh J. Plummer, Don Bradshaw, Michael D. Farmer, Houston, Tex., for defendant-appellant.

Daniel K. Hedges, U.S. Atty., James R. Gough, Sam G. Longoria, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

INGRAHAM, Circuit Judge:

Edgar Cherry Gant was charged in the United States District Court for the Southern District of Texas with violating 18 U.S.C. app. § 1202(a)(1),[1] which prohibits convicted felons from possessing firearms. Gant waived a jury trial and the case proceeded primarily upon an agreed stipulation of facts. Gant stipulated to a prior felony conviction and the interstate commerce jurisdictional requirement but asserted the justification defenses of duress and necessity. After considering the evidence and supplemental briefs addressing these defenses, the district court entered a general verdict of guilty[2] and made specific findings "[t]hat at the time of the possession charged, the defendant Gant had reason to believe that he was in danger of his life or serious bodily harm or loss of property; that he did not institute that situation himself." On appeal Gant contends that the common-law defenses of duress and necessity are available against a charge of violating 18 U.S.C. app. § 1202(a)(1) and that the evidence adduced in support of these defenses entitles him to acquittal. While our recent decision in *United States v. Panter,* 688 F.2d 268 (5th Cir.1982), recognizes the general availability of common-law defenses to such a charge, we disagree that the evidence in the record entitles Gant to an acquittal and therefore affirm the conviction.

The government contends that § 1202(a)(1) is unambiguous and has no ex-

press justification exemptions, and that duress and necessity should be considered, if at all, in mitigating the penalty assessed after conviction. The teachings of the Supreme Court in *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), and of this court in *Panter* indicate otherwise. In *Bailey* the Court determined that the justification defenses of duress and necessity are generally available in an 18 U.S.C. § 751(a) prosecution for escape from a federal prison, despite the statute's absolute language and lack of a mens rea requirement. We followed these teachings in *Panter* and recognized that since "Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law," § 1202(a)(1) did not preclude the assertion of the common-law doctrine of self defense. *Panter,* 688 F.2d at 271–72 (quoting from *Bailey,* 444 U.S. at 415 n. 11, 100 S.Ct. at 637 n. 11). Since our analysis in *Panter* disposes of the government's contention, we assume that on sufficient facts the common-law defenses of duress and necessity would justify a violation of 18 U.S.C. app. § 1202(a)(1). *See United States v. Agard,* 605 F.2d 665 (2d Cir.1979).

Having clarified this apparent uncertainty, the remaining issue is whether the record contains sufficient evidence to support the conviction, *Hall v. United States,* 286 F.2d 676 (5th Cir.1960), *cert. denied,* 366 U.S. 910, 81 S:Ct. 1087, 6 L.Ed.2d 236 (1961), or whether the evidence establishes the defense of duress or necessity.[3] Accordingly, we review the record in a

---

1. Section 1202 provides in part:
   (a) Any person who—
   (1) has been convicted by a court of the States or any political subdivision thereof of a felony, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

2. Gant was sentenced to two years imprisonment.

3. Commentators disagree on which defense— duress or necessity—is appropriate to assert in this situation. One view would classify this as

duress because the coercion had its source in the actions of other human beings, rather than in physical forces beyond the actor's control. *See Bailey,* 444 U.S. at 409–10, 100 S.Ct. at 634. Another approach notes that the typical duress case involves the situation in which A has ordered B to engage in criminal conduct or else suffer the threatened consequences. Necessity would be the proper classification because the threat is not direct and explicit. B would engage in a crime, not because he was ordered to do so, but because it was the lesser of two evils. *See* W. LaFave & A. Scott, *Criminal Law* §§ 49 n. 30, 50 n. 2, at 377, 381- 82 (1972). The Model Penal Code sets forth still another approach. Under the Code, the duress defense does not preclude a choice-of-evils, or necessi-

light most favorable to the government and accept all reasonable inferences and credibility choices that tend to support the verdict. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680 (1942); *United States v. Zweig,* 562 F.2d 962 (5th Cir.1977). Since Gant stipulated the elements of the substantive crime,[4] the inquiry focuses on the facts as they relate to the justification defenses.

At 8:30 p.m. on Thursday, November 12, 1981, Officers Lewis and Byrd of the Harris County Sheriff's Department entered the business offices of Texas Transportation Company, which is owned and operated by Gant. When the officers entered the premises, they were acting in an undercover capacity and were dressed in blue jeans, sport shirts, windbreakers, and tennis shoes. The officers offered to sell Gant a .45 caliber machine gun. After he refused to purchase the gun, Gant summoned Andrews, an employee, from the storage area. Andrews inspected the gun and renewed the refusal to purchase. When the officers continued their sales efforts, Andrews and Gant excused themselves and retreated to the storage area to confer. Having been subjected to a robbery attempt a few weeks earlier, they speculated that another was in the making and decided to prevent the attempt by running the two men off the premises. Andrews felt capable of enforcing this effort since he was carrying a pistol, but Gant was unarmed. Although confident of his ability to evict the men, Andrews desired a back-up and suggested that Gant retrieve a pistol from the second drawer of a filing cabinet in Gant's office. Unfortunately, Gant complied with his employee's request. Upon reentering the drivers' room with the pistol butt protruding from his pants pocket, the officers identified themselves, pulled out their revolvers, and placed everyone under arrest.

Gant contends that these facts entitle him to acquittal based upon duress or necessity. He stresses the district court's specific findings as supporting his claim. These findings alone, however, are insufficient to establish either affirmative defense. To interpose a justification defense to a charge of violating 18 U.S.C. app. § 1202(a)(1), defendant must show (1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," *United States v. Bailey,* 585 F.2d 1087, 1110 (D.C.Cir.1978) (Wilkey, J., dissenting), *rev'd,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1979); *see* Model Penal Code § 3.02(1)(a) (1974);[5] (2) that defend-

ty, defense. Consequently, if defendant can show that "a person of reasonable firmness in his situation would have been unable to resist" engaging in the criminal conduct because of the threat of unlawful force against his person, the defense of duress is available. Model Penal Code § 2.09 (1974). If defendant can also show that the harm of the criminal conduct is less than the harm of the threat, the additional choice-of-evils (necessity) defense is available. *Id.* § 3.02. Thus, under the appropriate circumstances, both defenses could be asserted. Gant, however, has failed to satisfy the minimum requisites of either defense. Therefore, we analyze this case in terms of those common elements and use the general classification of justification defense.

4. The agreed stipulation of facts provides in part:

1. On July 11, 1972, Edgar Cherry Gant, Defendant herein, was convicted in a Court of the United States of a felony punishable by a term of imprisonment in excess of one year.

2. In 1973, the Smith and Wesson Model 34, .22 caliber revolver, serial number M61223, was manufactured by said company at 2100 Roosevelt Avenue, Springfield, Massachusetts.

3. On October 17, 1973, said above described firearm was transported from Springfield, Massachusetts to Dallas, Texas.

.  .  .  .  .

10. Deputy E.E. Lewis immediately took the pistol, described in Count Two of the indictment from Defendant Edgar Cherry Gant's right pants pocket, from which it was protruding.

5. To justify criminal conduct under the theory of choice of evil (necessity), the Code requires that "the harm or evil sought to be avoided by such conduct [must be] greater than that sought to be prevented by the law defining the offense charged." Model Penal Code § 3.02(1)(a) (1974). The legislative history provides some aid in determining what harm or evil Congress sought to avoid with the enact-

ant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]," *United States v. Agard,* 605 F.2d 665, 667 (2d Cir.1979); *see* Model Penal Code §§ 2.09(2), 3.02(2) (1974); (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,'" *United States v. Bailey,* 444 U.S. 394, 410, 100 S.Ct. 624, 634, 62 L.Ed.2d 575 (1979); and (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm." *United States v. Cassidy,* 616 F.2d 101, 102 (2d Cir.1979); *United States v. Simpson,* 460 F.2d 515, 518 (9th Cir.1972); *see* Model Penal Code § 3.02(1), (2) (1974) (requiring an objective appraisal of whether criminal conduct was necessary to avoid the threatened harm).[6] Although the district court made specific findings addressing the imminent threat [7] and innocent victim [8] requisites, there are no specific findings concerning lack of alternatives or direct causal relationship.[9] Because Gant waived his right to specific findings of fact by not requesting them pursuant to Fed.R. Crim.P. 23(c), we must imply findings to support the judgment if the evidence, viewed in a light most favorable to the government, so warrants. *United States v. Ochoa,* 526 F.2d 1278, 1282 n. 6 (5th Cir. 1976).

As the Supreme Court emphasized in *Bailey,* "one principle of these justification defenses remains constant: if there

---

ment of 18 U.S.C. app. § 1202. *See generally Stevens v. United States,* 440 F.2d 144 (6th Cir.1971) (appending the entire legislative history on the section as extracted from the Congressional Record). This section was Senator Long's amendment to the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197 (codified as amended in scattered sections of 5, 18, 18 app., 28, 42 & 47 U.S.C.) which was passed in the wake of the assassinations of Senator Robert Kennedy and Dr. Martin Luther King, Jr., and was partially motivated by President Kennedy's assassination. It was intended to prevent killings by removing firearms from persons that Congress determined would be most likely to misuse them. As Congressman Pollock explained, "[t]he overall thrust is to prohibit possession of firearms by criminals or other persons who have specific records or characteristics which raise serious doubt as to their probable use of firearms in a lawful manner." *Id.* at 166 (quoting 114 Cong.Rec. 61,298 (1968)). To tip the balance of harms in favor of justifying the criminal conduct, the harm sought to be avoided must be death or serious bodily injury. Any lesser justifying harm circumvents the prevention of this greater harm.

6. Some commentators argue that an explicit causal relationship is necessary for the assertion of the defense of duress. *See* note 3, *supra.*

7. The district court found that "Gant had reason to believe that he was in danger of his life or serious bodily harm or loss of property." Since the threat of loss of property without more never justifies the use of deadly force, *e.g., McNabb v. United States,* 123 F.2d 848, 854 (5th Cir.1941), *reversed on other grounds,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), we assume that the district court would not have allowed either defense without an accompanying finding that Gant was in danger of death or serious bodily harm. *See* R. Perkins, *Perkins on Criminal Law* 1026 (2d ed. 1969). *See also* note 5, *supra.*

8. The district court found that Gant "did not institute that situation himself." Since the district court made limited specific findings, it could have analyzed Gant's mode of business operation as an alternative rather than under this element. Although Gant knew that the business was located in a high crime neighborhood, he chose to keep substantial amounts of cash on hand to cash his drivers' pay checks. Experience did not prove to be a good teacher for Gant because even after a robbery attempt, Gant chose to maintain his check cashing policy and chose not to extend the protection from his security guard to cover the few extra evening hours on Thursday nights when he maintained this cash. While the district court could have determined that changing his business procedures was a reasonable and legal alternative to the possession of a firearm, it could have found that Gant's choice of operating procedures placed him in a situation in which he would probably be forced to resort to the criminal possession of a firearm. We need not resolve which determination was more appropriate because Gant failed to demonstrate the other elements necessary for either defense.

9. These four requisites are merely elements common to both duress and necessity and do not define the precise contours of either. For example, continued possession beyond the time that the emergency exists will defeat the defenses. *E.g., Panter,* 688 F.2d at 272.

was a reasonable, legal alternative to violating the law, ... the defense will fail." *Bailey,* 444 U.S. at 410, 100 S.Ct. at 634. In demonstrating that he had no reasonable alternative to violating § 1202, Gant must show that he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative. *See id.* at 410–11 & n. 8, 100 S.Ct. at 634–35 & n. 8 (citing *People v. Richards,* 269 Cal.App.2d 768, 75 Cal.Rptr. 597 (1969), and *United States v. Boomer,* 571 F.2d 543, 545 (10th Cir.), *cert. denied sub nom., Heft v. United States,* 436 U.S. 911, 98 S.Ct. 2250, 56 L.Ed.2d 411 (1978), for the minimum showings needed to justify a prison escape). The most obvious legal remedy that Gant failed to pursue was simply to call the police. *See R.I. Recreation Center, Inc. v. Aetna Casualty & Surety Co.,* 177 F.2d 603 (1st Cir. 1949) (denying the duress defense because defendant did not call the police when he had an opportunity to do so). Since the officers had remained in the drivers' room, Gant had a chance to call the police during the time that he was meeting with Andrews in the storage room or was retrieving the pistol from his office. Gant testified on cross examination that he did not call the police because they had been slow to respond to a call made during a previous robbery attempt. A single contact, however, does not establish a history of futile attempts that indicate an illusionary benefit. *See United States v. Colacurcio,* 659 F.2d 684 (5th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1635, 71 L.Ed.2d 869 (1982) (determining that the alternative was not foreclosed even though on two prior occasions defendant's complaints filed with the police had received no satisfaction, but instead had provoked a law suit by one of the policemen). As the Tenth Circuit has observed:

> The [justification defense] does not arise from a "choice" of several sources of action; it is instead based on a real emergency. It may be asserted only by a defendant who was confronted with a crisis as a personal danger, a crisis that did not permit a selection from among several solutions, some of which would not have involved criminal acts.

*United States v. Lewis,* 628 F.2d 1276, 1279 (10th Cir.1980), *cert. denied,* 450 U.S. 924, 101 S.Ct. 1375, 67 L.Ed.2d 353 (1981). The record reveals a reasonable, legal alternative of which Gant could, but did not, choose. It would have avoided the threat associated with the presumed robbery attempt without the criminal possession of the firearm. Moreover, unless defendant demonstrates that he pursued his alternatives or that they were foreclosed, he may not successfully raise the justification defenses. *See Colacurcio,* 659 F.2d at 690. The district court's implied finding that Gant had untried, reasonable, legal alternatives available is not clearly erroneous.

To assert either defense, Gant must also show that a direct causal relationship could be reasonably anticipated between the proscribed action and the avoidance of the threatened harm. This element is often encompassed in the lack of alternatives determination. *E.g., United States v. Mauchlin,* 670 F.2d 746, 748 (7th Cir.1981) ("[threatened harm] can be avoided only by commission of the crime charged"). Nevertheless, a distinct analysis is appropriate because justification defenses are based on the premise that society benefits when the lesser harm associated with the commission of the criminal activity prevents the greater harm associated with the threat. *See Bailey,* 585 F.2d at 1109 (Wilkey, J., dissenting); *LaFave & Scott, supra* note 3, §§ 49–50, at 374, 381. If the criminal act cannot abate the threatened harm, society receives no benefit from the criminal conduct because it suffers the harm from both the crime and the threatened activity.

The verdict implies a finding that the causal relationship between the possession of a firearm and the abatement of the threat of death or serious bodily injury could not be reasonably anticipated. Although defendant's possession and probable use of a gun makes a robbery attempt less attractive, it does not eliminate defendant's danger. The present situation should be distinguished from the hypothetical dis-

cussed in *Panter,* in which the convicted felon disarms his assailant and holds him at bay. *Panter,* 688 F.2d at 271. In the hypothetical, the defendant drastically diminishes the danger to his life when he seizes the gun from his assailant. In the present setting, however, Gant's interjection of a firearm escalated the danger for everyone rather than extinguished the threat to him. When Gant reconfronted the officers, his obvious possession of the pistol precipitated the drawing of service revolvers.[10] Fortunately, the officers' expertise prevented any shooting and no one was injured. Gant's handgun possession, however, did not provide the benefit society demands to justify such criminal behavior. Whether a causal relationship could be reasonably anticipated is an objective factual determination and we do not find the district court's implied finding clearly erroneous.

We emphasize that since the justification defenses are affirmative defenses, defendant must demonstrate each element before he may successfully raise the defense of duress or necessity. We agree with the district court that no justification defense was present in this case because defendant failed to show that he had no reasonable, legal alternatives and that the possession of the firearm could be reasonably anticipated to abate the threat of death or serious bodily injury created by the presumed robbery attempt. The conviction by the district court is therefore

AFFIRMED.

---

10. Andrews testified that when Gant reentered the room with the pistol, "[a]ll hell broke loose. The next think (sic) I saw was a big gold badge and two big pistols pointed at all and said 'You all are under arrest.'" Record at 18.