**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**German MEJIA, Defendant-Appellant.**

**No. 83–3119.**

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1983.

Rehearing Denied Jan. 3, 1984.

Glass & Reed, Robert Glass, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Jan M. Maselli, Robert T. Myers, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before WISDOM, REAVLEY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The defendant, German Mejia was convicted of importation of cocaine hydrochloride and possession of cocaine hydrochloride with intent to distribute. 21 U.S. §§ 952(a)

and 960(a)(1). He appeals from that conviction. We affirm.

Mejia is a Colombian national who entered the United States from Colombia in September 1982. Upon his arrival at New Orleans International Airport, Mejia was questioned in the primary inspection area by a customs official. After routine preliminary questions, the customs officer sent Mejia to the secondary area because Mejia spoke no English and because he was arriving from a country known to be a source of narcotics.

During questioning through an interpreter in the secondary area, customs officers noted several discrepancies which aroused a suspicion that Mejia might be attempting to import controlled substances, such as cocaine. Among the observations made by customs officials were: (1) Mejia claimed to be a buyer on a buying trip for a store in Bogota, but he was not dressed as a businessman, had no personal business cards or business suits with him, and carried only one small suitcase (Mejia lives in Cali, Colombia); (2) Mejia said that he was spending two to three days in Houston, then going on to Los Angeles, but he had no hotel reservations in Houston and his confirmed airline ticket was for a flight leaving Houston for Los Angeles the same day; (3) he had no reservations in California; (4) Mejia was carrying $2000 in United States currency, mostly in $20 bills, but could not state the rate of exchange for pesos into dollars; (5) Mejia did not know how much his airline ticket cost although it was paid for in cash; (6) Mejia's airline ticket was sequentially numbered to and from the same travel agency as the ticket of another passenger on the same flight, who was also detained for questioning, and both tickets had the same itinerary and thirty-day expiration; (7) Mejia was abnormally calm, and his answers were similar to those of the other detained passenger; (8) Mejia's passport showed two prior entries within the previous fourteen months; (9) Mejia's hands were calloused; and (10) Mejia was carrying a chauffeur's license.

Based on their own experience with importation of drugs by ingestion of "balloons" [1] and courier profiles which reflected the experiences of customs agents at other ports of entry, the New Orleans agents asked Mejia if he would consent to abdominal X-rays. The consent form is written in both English and Spanish. The interpreter instructed Mejia to read the form, and when he had finished, read it to him in Spanish. She also explained what X-rays are and Mejia indicated that he understood. Mejia orally consented to the X-ray search and later signed a consent form.

The customs agent took Mejia to East Jefferson Hospital, where a nurse, through the interpreter, re-explained the procedure and took a short medical history. X-rays were then taken of Mejia's abdomen. The X-rays showed foreign bodies in Mejia's abdomen, and he was then arrested and given *Miranda* warnings. Mejia was transferred to Charity Hospital, where he subsequently excreted seventy-five balloons which contained a total of about 555.0 grams of cocaine hydrochloride. Mejia concedes that he imported the cocaine, but contends that his consent to the X-ray search was not voluntary and is therefore invalid.

Mejia contends that his consent was invalid because, under the totality of the circumstances, it was coerced. Mejia argues that the following facts support a finding of the subtle coercion forbidden by *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973): (1) the interrogation room was small and windowless, and the door to the room was closed during the interrogation; (2) the interrogator was in uniform and introduced himself by rank; and (3) the interrogator made no affirmative effort to put Mejia at ease. As further evidence of the involuntariness of his consent, Mejia notes that the interrogator made no affirmative effort to ensure that Mejia knew he had a right to

---

1. The cocaine is placed in rubber balloons or fingers from rubber gloves, which are then wrapped in tin foil and a second balloon of prophylactic rubber. The courier swallows the balloons, enters the United States, then excretes the balloons.

refuse to consent to the X-ray, and that the interrogator did not read the *Miranda* warnings to Mejia.

We conclude that Mejia's consent was not coerced. While the interrogation room is small and completely enclosed, the design of the room is intended to provide privacy during questioning. The conditions in the room were neither abnormal nor specially altered for Mejia. Customs officers customarily wear uniforms when they are working, the interrogating officer does not appear to have made any attempt to intimidate Mejia, and intimidation will not be presumed from physical surroundings alone.

Ignorance of the right to refuse to consent to a search is a factor to be considered in evaluation of the totality of the circumstances, but it is not dispositive of the issue of voluntariness. "[T]he defendant need not be informed specifically of his Fourth Amendment rights . . ., nor must the investigating officer state that he will refrain from searching if the defendant refuses to give permission." *United States v. Horton,* 488 F.2d 374, 380 (5th Cir.1973), *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). *See also Schneckloth,* 93 S.Ct. at 2049–51.

Customs officers are entrusted with the duty of protecting our borders from those who would enter without authorization or with improper purpose. Searches at the border are reasonable simply because they occur at the border. *United States v. Sandler,* 644 F.2d 1163, 1169 (5th Cir.1981) (*en banc*). "Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be 'reasonable' by the single fact that the person or item in question had entered into our country from outside." *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 1980, 52 L.Ed.2d 617 (1977). Routine inquiries about the purpose of the entry into this country and the travel plans incident to it may be asked even without a reasonable suspicion of wrongdoing. The officer is entitled to responses to such questions and is under no affirmative obligation to put the person seeking entry at ease. This is especially true where the officer perceives unusual responses, conduct, demeanor, or appearance. The safeguards of *Miranda* do not apply to such preliminary routine inquiries at national borders. *Miranda* warnings need not be given until the investigation has focused on the suspect and the agents have probable cause to believe that the suspect has committed an offense. *Chavez-Martinez v. United States,* 407 F.2d 535, 539 (9th Cir.), *cert. denied,* 396 U.S. 858, 90 S.Ct. 124, 24 L.Ed.2d 109 (1969).

In circumstances similar to those faced here, this Court has held that, although the customs agent had reason to be suspicious because the suspect fit the smuggler profile and could therefore search the person of the suspect, the agent did not have probable cause for arrest and therefore was not required to give the suspect the *Miranda* warnings. *United States v. Smith,* 557 F.2d 1206, 1210 (5th Cir.1977), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). In the instant case, the Customs officers were suspicious of Mejia for a number of reasons, but none amounted to probable cause for arrest until the X-rays revealed foreign objects in Mejia's abdomen. The *Miranda* warning which was read to Mejia at the time of his arrest was timely and adequate.

Mejia's consent to the X-ray examination occurred during constitutionally permissible interrogation which was conducted without intimidation or coercion. Mejia spoke only Spanish, but the consent form was printed in Spanish, it was read to Mejia in Spanish, and the X-ray procedure was explained to him in Spanish. It is apparent that Mejia was aware of that to which he was consenting, and his alleged ignorance of his fourth amendment rights does not of itself negate voluntariness. Under the totality of the circumstances, Mejia's consent cannot be held to be involuntary.

Mejia also asserts that the facts do not support a reasonable suspicion great enough to justify a search as "intrusive" as X-rays. This Court has stated that, for policy reasons, searches at national borders,

consented or unconsented, are permissible and do not require "full-blown probable cause"; reasonable suspicion is sufficient. *United States v. Himmelwright,* 551 F.2d 991, 994, (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Such suspicion may be based on a smuggler profile, prior experience of the officers, and preliminary questioning of the suspect. *United States v. De Gutierrez,* 667 F.2d 16, 19 (5th Cir.1982). While fitting a profile may not be sufficient by itself, the profile may be used to identify those persons who may warrant closer examination. The combination of the profile with information obtained by such examination may be sufficient to raise reasonable suspicion. The greater the level of suspicion, the more intrusive the search may be.

■ Mejia matched ten of the eleven points on the drug courier profile. His ticket did not match his declared itinerary, his appearance did not comport with his stated occupation, and he was abnormally calm. Based on past personal experience and knowing that importing ingested cocaine is now common, the customs official had sufficient suspicion to warrant an X-ray search.

■ Mejia interprets intrusion as the equivalent of physical invasion, but this Court's interpretation is that intrusion is keyed to embarrassment, indignity, and invasion of privacy. *Sandler,* 644 F.2d at 1163, 1167. Under this interpretation, the X-ray search was not excessively intrusive. It was performed in a hospital by hospital personnel, and Mejia was questioned about his health history and any prior exposure to X-rays before the X-rays were taken. Neither hospital personnel nor customs officials performed a physical search on Mejia's body or subjected him to indignity or embarrassment. The search cannot be said to be impermissible.

■ During trial, Mejia requested funds to bring his wife from Colombia to New Orleans to testify in support of his defense of duress. After his request for funds was denied, counsel made a proffer of what Mrs. Mejia would have said. The proffer indicates that Mrs. Mejia had no independent knowledge of any threats; she knew only what her husband had told her. Such evidence is not probative of duress. The request was properly denied.

■ At the close of testimony, Mejia requested the trial court to instruct the jury that, when the defense of duress is raised, the burden of proof shifts to the Government to prove an absence of duress. The trial court refused to give the instruction. Mejia is entitled to an instruction on the burden of proof only if he has proved all elements of the defense. *United States v. Gant,* 691 F.2d 1159, 1165 (5th Cir.1982). This Court has stated that, to successfully raise duress as a defense, the defendant must show that (1) there was a present and unlawful threat and a well-grounded apprehension of death or serious injury; (2) the defendant did not recklessly or negligently place himself in a situation in which duress could arise; (3) the defendant did not have a reasonable legal alternative to violating the law; and (4) there was a direct causal relationship between the criminal act and avoidance of the threatened harm. *Gant,* 691 F.2d at 1162–63. At the least, Mejia failed to prove the third element; his personal feeling that the Cali police were in league with the drug exporters does not establish that he did not have a reasonable legal alternative to violating the law. Having failed to prove each of the four elements, as is required, Mejia was not entitled to the requested instruction of burden of proof. *Id.* at 1165.

The judgment of the district court is affirmed.

AFFIRMED.