820 F.2d 1220
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
KIN CHEUNG LEUNG, Defendant-Appellant.
 No. 86-5131.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1987.
Decided June 1, 1987.
 
 Before MURNAGHAN and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Catherine A. Smith (Robert T. Durkin, Jr., on brief), for appellant.
 Carmina Szunyog Hughes, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Kin Cheung Leung was convicted by a jury in the United States District Court for the District of Maryland of possessing counterfeit United States money with the intent to defraud, in violation of 18 U.S.C. section 472 and aiding and abetting in violation of 18 U.S.C. section 2.
 
 
 2
 The defendant claims that the trial court erred in denying the defendant's motion to suppress and exclude statements made by the defendant prior to his being advised of his Miranda rights.
 
 
 3
 Interrogation at the border is considered to be noncustodial in nature. Carroll v. United States, 267 U.S. 132 (1925). Detention and routine questioning at the border concerning who and what is coming into the country is not governed by Miranda until probable cause is found. United States v. Mejia, 720 F.2d 1378, 1381 (5th Cir.1983); Chavez-Martinez v. United States, 407 F.2d 535 (9th Cir.1969), cert. denied, 396 U.S. 858 (1969). Even if probable cause is found, however, "[t]he admission of statements obtained in violation of Miranda may constitute harmless error when there remains overwhelming independent evidence as to the defendant's guilt." United States v. Packer, 730 F.2d 1151, 1157 (8th Cir.1984). See also United States v. Davis, 657 F.2d 637, 640 (4th Cir.1981); United States v. Tibbits, 565 F.2d 867, 868 (4th Cir.1977).
 
 
 4
 Leung arrived at the Baltimore Washington International Airport on April 11, 1986, from London, England. At the Customs primary inspection area, he was questioned by Inspector Cray. Leung's nervousness, lack of luggage and the brevity of his stay outside the country caused Inspector Cray to refer Leung to the secondary inspection area for a more complete inspection.
 
 
 5
 Leung's customs declaration indicated that he was carrying less than $10,000 in currency. U.S. Customs Inspector Murphy began to inspect Leung's luggage and found an envelope filled with forty fifty dollar bills in a hand-carried plastic bag. Inspector Murphy noticed that the texture and color of the money seemed strange and he called Inspector Morris for assistance.
 
 
 6
 Leung gave several reasons for the money's appearance and stated that it was "old money", but failed to explain what he meant by "old money". Special Agent Trader was then informed of what had transpired. He took a few bills and called the Secret Service in order to determine whether the money was counterfeit. Special Agent Trader returned and stated that the Secret Service had given him a preliminary determination that the money could be counterfeit.
 
 
 7
 A short time later Inspector Morris asked Leung where he had obtained the money. Leung gave a brief explanation involving a money man in the Croyden section of London, England and produced envelopes containing $10,200 in fifty dollar bills. Special Agent Pforr of the United States Secret Service arrived, examined the money and determined that it was counterfeit. Leung was advised of his Miranda rights and searched. In his wallet, one counterfeit fifty dollar bill and two postal receipts were found.
 
 
 8
 The postal receipts were for packages. One was intercepted at the border in the mail and a search warrant was obtained for the other. Both packages contained catalogs which had been hollowed out and filled with counterfeit money. Leung's fingerprints were found in one of the catalogs. A total of 700 counterfeit fifty dollar bills was found.
 
 
 9
 Leung contends that probable cause to suspect a crime had been committed existed after the preliminary determination that the money was counterfeit and, therefore, Leung should have been advised of his Miranda rights at that point in time. Because he was not advised of his rights, Leung argues that testimony concerning the statements he made between the time probable cause first existed and the time he was advised of his Miranda rights was improperly admitted into evidence.
 
 
 10
 The district court found that no probable cause existed until Special Agent Pforr examined the money because, as Pforr testified, counterfeit money can only be detected upon the personal examination of a trained expert. Whether probable cause existed after Special Agent Trader's phone call to the Secret Service is a close question which we need not decide. Even if probable cause had existed so that the defendant was questioned in violation of Miranda, the statements which would have been excluded were of little significance. The record contains overwhelming evidence supporting the jury's verdict without Leung's statements to Inspector Morris. Leung's nervousness, his falsified customs declaration, the two packages containing hollowed catalogs with numerous counterfeit bills, and the presence of Leung's fingerprints in one of the catalogs all support his conviction. Clearly, if the trial court's denial of the defendant's motion to suppress and exclude statements was error, such error was harmless. The judgment of the district court is affirmed.
 
 
 11
 AFFIRMED.