951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor LACY, Defendant-Appellant.
 No. 90-6161.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1991.
 
 Before KEITH and BOGGS, Circuit Judges, and BERTELSMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Victor Lacy ("Lacy") appeals from his jury conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). We affirm Lacy's conviction.
 
 
 2
 * On August 29, 1989, police officers approached Lacy near his mother's home, where he was living shortly after his release from prison, and attempted to purchase crack from Lacy as part of an undercover drug operation on Lewis Street in Memphis, Tennessee. Lacy replied that he did not have any drugs. The officers then started to drive off, but either Lacy or Jennifer Wallace ("Wallace"), Lacy's sister, called and asked them to return. Wallace sold a piece of crack to one of the officers. While the officers were in the process of purchasing another piece of crack, they grabbed Wallace.
 
 
 3
 Lacy observed the transactions while standing in the doorway of 998 Lewis Street. He stated that he believed the officers to be drug dealers. Based on that belief, he took an unloaded shotgun from the house hallway to protect his sister. The police identified themselves and, within a few moments, Lacy backed up, put the shotgun down, and surrendered. The police then arrested Lacy.
 
 
 4
 On September 7, 1989, a federal grand jury returned a four-count indictment charging the defendant with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841, aiding and abetting, in violation of 18 U.S.C. § 2, use of a minor in the commission of a drug offense, in violation of 21 U.S.C. § 845(b), and carrying and using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).
 
 
 5
 Lacy participated in plea bargaining concerning the drug charges. Lacy's attorney was advised that if Lacy did not plead guilty, he would be indicted on additional charges for being a felon in possession of a firearm, in violation of 28 U.S.C. § 922(g). Lacy's attorney advised Lacy of the sentence he was facing and the possibility that the government would bring an additional charge. Lacy, maintaining his innocence, turned down the government offer repeatedly. Lacy pled not guilty to the drug charges. On October 20, 1989, a federal grand jury returned a second indictment charging Lacy with being a convicted felon in possession of a firearm, in violation of 28 U.S.C. § 922(g). On October 26, 1989, the government advised Lacy that unless he pled guilty, it would seek an upward departure from the United States Sentencing Guidelines (the "Guidelines").
 
 
 6
 On November 22, 1989, Lacy moved to dismiss the second indictment for failure to consolidate and vindictive prosecution. The government moved to consolidate the separate indictments for trial. The court denied Lacy's motion to dismiss the indictment and granted the government's motion to consolidate.
 
 
 7
 After a jury trial, the jury returned a verdict of not guilty on all drug-related counts and returned a verdict of guilty on the convicted felon in possession of a firearm count. The court sentenced Lacy to the mandatory period of fifteen years' incarceration.
 
 II
 
 8
 Lacy argues that the second indictment, returned after he refused to plead guilty to the first indictment, resulted from vindictive prosecution. We hold that the district court properly denied defendant's motion to dismiss the indictment for vindictive prosecution.
 
 
 9
 This case is controlled by the Supreme Court's holding in Bordenkircher v. Hayes, 434 U.S. 357 (1978). In Bordenkircher, the defendant was indicted for uttering a forged instrument in the amount of $88.30, an offense then punishable by a term of imprisonment of two to ten years. Id. at 358. After the indictment, the prosecutor in Bordenkircher informed the defendant that he would recommend a sentence of five years if Hayes would plead guilty to the indictment. The prosecutor in Bordenkircher also informed Hayes that if Hayes did not plead guilty, the prosecutor would return to the grand jury and seek an indictment under the Kentucky Habitual Criminal Act, Ky.Rev.Stat.Ann. § 431.190 (1973) (repealed 1975), which would subject the defendant to a mandatory sentence of life imprisonment. Bordenkircher, 434 U.S. at 358. Hayes chose to plead not guilty and the prosecutor did obtain an indictment charging him with violating the Habitual Criminal Act. Id. at 359. Hayes was found guilty and sentenced as a habitual offender.
 
 
 10
 Hayes argued to the Supreme Court that the prosecutor violated the due process clause of the fourteenth amendment when he carried out a threat made during plea negotiations to re-indict the accused on a more serious charge if the accused did not plead guilty to the original charge. Id. at 358. The Supreme Court held that the prosecutor's conduct did no more than to present the defendant openly with the unpleasant alternative of foregoing trial or facing charges on which he was plainly subject to prosecution. Id. at 365. The Court noted that in the plea bargaining process there is no element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. Id. at 363. The Court stated that the discouraging effect on trial rights of the government's threat was an inevitable and permissible attribute of a plea bargaining system. Id. at 364. It therefore held that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Ibid.
 
 
 11
 Lacy argues that he has demonstrated vindictiveness under our decision in United States v. Andrews, 733 F.2d 449 (6th Cir.1980) (en banc), cert. denied, 450 U.S. 927 (1981). Andrews, however, explicitly distinguished Bordenkircher and the plea bargaining situation from other situations in which the prosecutor seeks an additional penalty for exercise of constitutional rights. Id. at 456. See also United States v. Goodwin, 457 U.S. 368 (1982). The prosecutor's tactic here was explicitly endorsed, or at least condoned, by the Supreme Court in Bordenkircher. He sought an additional indictment for crimes that he had probable cause to believe that Lacy committed. Lacy does not dispute that the prosecutor had probable cause to believe he was a felon in possession of a firearm. The prosecutor's conduct was therefore proper in light of the plea-bargaining context in which it occurred and does not constitute vindictive prosecution.
 
 III
 
 12
 Lacy further argues that the trial court erred in failing to instruct the jury on a theory of justification or necessity as a defense to the charge of being a felon in possession of a firearm. He argues that he was justified in taking possession of the weapon in order to protect his sister from an apparent attack by drug dealers. By its terms, 18 U.S.C. § 922(g) provides only that "[i]t shall be unlawful" for a felon to possess a firearm. Section 922(g) is not an analog to any crime at common law; it is a purely statutory invention. Nonetheless, courts have recognized, at least in principle, that common law defenses can apply to statutory crimes, even when the wording of the statutory provision would seem absolute. See, e.g., United States v. Bailey, 444 U.S. 394, 409, 100 S.Ct. 624, 634 (1980).
 
 
 13
 It is unclear which of the many common law defenses Lacy wishes to invoke. The defense that Lacy invokes has elements in common with duress, necessity, and, most directly, with defense of others. Although courts have frequently noted that common law defenses can apply to statutes of this type, those defenses rarely prevail. Indeed, if one theme emerges from the cases it is that the federal courts have taken the word "necessity" reasonably literally. As (then) Justice Rehnquist explained, "[u]nder any definition of these defenses one principle remains constant: if there was a reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' the defenses will fail." Id. at 410, 100 S.Ct. at 635 (citations omitted).
 
 
 14
 In United States v. Singleton, 902 F.2d 471 (6th Cir.1990), we stated that the four-factor test from United States v. Gant, 691 F.2d 1159 (5th Cir.1982) would be applied to ascertain whether a jury instruction presenting a justification defense is required. Technically, our discussion of the issue in Singleton, like the explication of the four-factor test in Gant, is a dictum, since neither of those cases held that the instruction was necessary (nor did the Supreme Court, in Bailey, for that matter). We have never actually held that the justification defense did apply--we have simply stated in a dictum that it might, and given a "test" for when it would.
 
 
 15
 In any event, in Gant, the Fifth Circuit stated that, in order to assert a justification or necessity defense successfully, the defendant must prove four elements:
 
 
 16
 (1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury,";
 
 
 17
 (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct],";
 
 
 18
 (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,' "; and
 
 
 19
 (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."
 
 
 20
 Gant, 691 F.2d at 1162-63 (citations omitted; bracketed material in original). Note that this test is conjunctive: a defendant must satisfy all four elements. We "adopted" this test in Singleton, 902 F.2d at 472. Nonetheless, we emphasized at the time that "the keystone of the analysis is that the defendant must have no alternative--either before or during the event--to avoid violating the law." Id. at 473 (emphasis added).
 
 
 21
 Lacy's defense fails this test on several grounds. At the outset, the danger sensed by Lacy was not danger to himself, but to a third party--his sister. Although common law defenses may have some application to non-common law crimes, allowing felons to take up arms in defense of others would eviscerate § 922(g). Neither Gant nor Singleton even hinted at the possibility that defense of a third party would be enough to trigger an instruction, and we should be loath to extend dictum regarding an essentially judge-created defense to this great extent.
 
 
 22
 Part of what is driving this line of cases is a recognition that it is unreasonable to attempt to force anyone, even a felon, to be killed rather than pick up a gun. Thus, in United States v. Panter, 688 F.2d 268 (5th Cir.1982), the court reversed where a defendant used a gun in the course of a fight, initiated by another, in which the attacker stabbed him with a knife. Letting felons come to the aid of others (especially when, in fact, those others were engaged in drug deals) would, however, create a great potential for abuse.
 
 
 23
 Even if the defense of another were assumed to be a viable defense under the statute, Lacy still could not invoke that defense here. Gant requires an unlawful threat of imminent bodily harm, and any threat to Lacy's sister was perfectly lawful. Although Professors LaFave and Scott express the view that, in the case of defense of another, a reasonable mistake on the part of the intervenor should be sufficient to avoid liability, they nonetheless concede that courts are split on the issue. See W. Lafave & A. Scott, Substantive Criminal Law (1986) § 5.8(b). They note that a significant number of cases have adopted the "alter ego" rule, in which an intervenor's rights are "coextensive with the other's right to protect [her]self." Ibid. Under this rule, Lacy would not be justified, since his sister knew that the "attackers" were police.
 
 
 24
 As a matter of statutory construction, engrafting common law defenses on a statute that is, by its terms, absolute, may be justified because "Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law." Butler, 444 U.S. at 415 n. 11, 100 S.Ct. at 637 n. 11. Where, as here, the common law rule is ambiguous, the rule advocated by Lacy is not a part of the common law background against which Congress legislated. Thus, it is not appropriate for us to interpret the statute to include such a rule, even if we happen to believe, with Professors Lafave and Scott, that the rule is "preferable." Accordingly, Lacy fails the first element, on two distinct grounds.
 
 
 25
 Next, Lacy fails the third element. He did not demonstrate that he had no reasonable, legal, alternative other than picking up the gun. In Gant, the court held that the defendant should at least have attempted to call the police to summon assistance. Gant, 691 F.2d at 1164. Lacy maintained, at oral argument, that a call to the police would have been ineffective. Lacy failed, however, to come forward with any such evidence.
 
 
 26
 Finally, Lacy fails to meet the fourth requirement. Gant is directly on point here. As the Fifth Circuit explained, "justification defenses are based on the premise that society benefits when the lesser harm associated with the commission of the criminal activity prevents the greater harm associated with the threat. If the criminal act cannot abate the threatened harm, society receives no benefit from the criminal conduct because it suffers the harm from both the crime and the threatened activity." Ibid.
 
 
 27
 In Gant, the defendant had picked up a gun in order to foil what he believed to be a robbery. The court held that the "abatement" element was not satisfied, reasoning that "[a]lthough defendant's possession and probable use of a gun makes a robbery attempt less attractive, it does not eliminate defendant's danger." Ibid. Further, the court distinguished its situation from the Panter case where the defendant's use of the gun actually decreased the danger. Here, by picking up the shotgun, Lacy probably increased the danger to his sister. A shotgun is not an accurate weapon; it spreads shot over a large area. "Gant's interjection of a firearm escalated the danger for everyone rather than extinguished the threat to him." Ibid. So, here, Lacy's interjection of a shotgun increased the likelihood of gunplay. Such gunplay could have resulted in death or great bodily injury to his sister, the person whom he allegedly was protecting.
 
 IV
 
 28
 Lacy's conviction is, therefore, AFFIRMED.
 
 
 29
 KEITH, Circuit Judge, dissenting.
 
 
 30
 Because the test for whether or not a jury instruction on the justification defense is warranted is a partially subjective test of a defendant's reasonable perception of the events despite the objective reality hidden from the defendant, I must respectfully dissent.
 
 
 31
 Initially, it must be made clear that a defendant possesses a firearm only if he has the power and intention to exercise dominion and control over it. United States v. Craven, 478 F.2d 1329 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Lacy did not possess the gun by merely being in the house where it was located and where it was readily accessible. The house was not Lacy's, but his mother's. He had been home from prison only a couple of days. That a gun was in the hallway of the house does not indicate that he exercised control over the firearm prior to the incident with the undercover police. This case is distinguishable from cases where the defendant had purchased the weapon in the name of another resident, see United States v. Scales, 599 F.2d 78 (5th Cir.1979); or where the residence was the defendant's own home, see United States v. Jordan, 321 F.Supp. 713, 717 (E.D.Va.1971), rev'd on other grounds, 453 F.2d 884 (4th Cir.1972). Defendant's short period of residence in his mother's house did not give him possession of the weapon.
 
 
 32
 Since defendant did not "possess" the shotgun prior to the incident, this Court must decide whether or not he presented sufficient evidence that his conduct under the circumstances entitled him to a jury instruction on the justification defense. The evidence demonstrates that he did.
 
 
 33
 I agree with the Majority that in United States v. Singleton, 902 F.2d 471, 472-73 (6th Cir.1990), this Court adopted the four-factor test enumerated in United States v. Gant, 691 F.2d 1159 (5th Cir.1982), for a justification defense to the charge of possession of a firearm by a felon. However, despite the language in Singleton, I do not agree that the four-part test is objective. Rather, the test is partly subjective and requires the reviewing court to examine the facts from the perspective of a reasonable person in the defendant's position. For example, Singleton asks first whether defendant was under an unlawful and imminent threat so as to induce a well-grounded apprehension of serious bodily injury. Id. The language suggests that it is whether the threat is objectively unlawful which determines whether a justification defense is available. It appears that the availability of the justification defense is not dependent upon whether the defendant subjectively believed that the threat was unlawful.
 
 
 34
 The Singleton test, however, was adopted from Gant where the court used the same objective language. In Gant, the Fifth Circuit found that the unlawful threat requirement had been met even though, like in the instant case, the "threat" was the lawful presence of undercover police officers who were perceived by the defendant to be criminals. Thus, Gant implicitly applied at least a partially subjective test of the defendant's reasonable perception of the events, despite the objective reality hidden from the defendant.
 
 
 35
 Furthermore, in Singleton we found that the justification test was adopted from the common law. As the majority recognizes, in the Handbook on Criminal Law, Professors LaFave and Scott indicate that the courts are split between those that hold that a justification defense in the name of protecting another is only available if the person protected could have used the defense[1] and those that hold that a defendant's reasonable belief entitles him to the defense. LaFave and Scott state that relying on the defendant's reasonable belief is the view adopted by new state criminal codes and is "surely the preferable view." W. LaFave & A. Scott, Handbook on Criminal Law 398-99 (1972). Similarly, American Law Reports has reported that of those states legislating the justification defense, the prevalent view is that it is the intervenor's reasonable belief, rather than objective reality, that controls. Annotation, Construction and Application of Statutes Justifying the Use of Force to Prevent the Use of Force Against Another, 71 A.L.R.4th 940, 947 (1989). Because of Singleton's foundation in Gant and the well established trend of state law, I think that Gant and Singleton, despite their objective language, clearly reflect the application of a partially subjective test.
 
 
 36
 Accordingly, it is my view that the facts in the instant case must be examined from the perspective of a reasonable person in defendant's position when applying the Singleton test. When the facts in the instant case are considered from Lacy's viewpoint and according to his testimony, it is clear that he provided sufficient evidence to create a jury question as to whether he met the four elements of the defense and was therefore entitled to a justification instruction.
 
 
 37
 Applying the four-part test, it is conceivable that from Lacy's perspective, his sister was in immediate danger of serious bodily injury by being unlawfully attacked by more than one man who Lacy reasonably believed were drug dealers. It is reasonably arguable that Lacy did not know the true identity of the officers since he observed his sister sell crack cocaine to them and he immediately relinquished the weapon when informed of the officers' identities. Thus the first criterion requiring immediacy and unlawfulness was supported by evidence sufficient to present the issue to the jury.
 
 
 38
 Lacy also presented evidence which, if believed by the jury, could satisfy the second criterion. By Lacy's account, he was in his mother's home when the event occurred in front of his mother's house. Thus he did not negligently or recklessly place himself in the situation.
 
 
 39
 Next, Lacy reasonably argues that he had no time to call the police and wait for their arrival before the perceived attacker would have inflicted bodily injury upon Lacy's sister. While Lacy could have gone to the telephone, he reasonably believed that in the interim his sister could have been seriously injured in an attack. He testified that there had been threats against his sister and that he had reported them to the police. Therefore, the third criterion of no reasonable alternative was also demonstrated by the immediacy of the threat.
 
 
 40
 Finally, a direct causal relationship between the action taken and the avoidance of harm was also supported by the evidence. A direct causal connection can be made between drawing a gun and deterring an assault by several apparently unarmed individuals. It was reasonable for Lacy to believe that the attackers would flee when faced with the shot-gun. That the officers pulled their service revolvers, thus escalating the situation, does not change the reasonable, foreseeable causality at the time Lacy got the weapon.
 
 
 41
 Based on the above, I believe that Lacy was entitled to a justification instruction. Consequently, I respectfully dissent from the majority's decision to affirm the judgment and sentence, and would remand this case for a new trial with a proper instruction on the justification defense.
 
 
 
 *
 The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 The defense limited to the right of self-defense of the person attacked would not be available under the instant facts since the sister had been informed by the police that they were officers