UNITED STATES of America,
Plaintiff-Appellee,

v.

Lonnie D. CLARK, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Lonnie D. CLARK, Defendant-Appellee.

Nos. 76–1145, 76–1176.

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1977.

Rehearing Denied March 24, 1977.

Thomas G. Sharpe, Jr., Brownsville, Tex., for Lonnie D. Clark.

Michael P. Carnes, U. S. Atty., Dallas, Tex., Bob D. Slough, Asst. U. S. Atty., Lubbock, Tex., for United States.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES,[*] District Judge.

HUGHES, District Judge:

On April 16, 1975, a 40 count indictment was issued, with each count charging that Defendant Lonnie D. Clark had violated 15 U.S.C. § 714m(a)[1] and 18 U.S.C. § 2[2] by making or causing to be made false statements for the purpose of obtaining payments under the 1973 Upland Cotton Allotment program, established pursuant to the Agricultural Act of 1970.[3] A jury returned a verdict of guilty on 37 counts[4] and not guilty on 3 counts.[5] Defendant's Motion in

---

[*] Senior District Judge for the Northern District of Texas, sitting by designation.

1. In pertinent part, § 714m(a) reads:

"Whoever makes any statement knowing it to be false, . . . for the purpose of influencing in any way the action of the [Commodity Credit] Corporation, or for the purpose of obtaining for himself or another, money, property, or anything of value [under 15 U.S.C. §§ 714–714o or under any other Act applicable to the Corporation] shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment by not more than five years, or both."

2. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. Pub.L. No. 91–524, §§ 601–610; 84 Stat. 1358 (November 30, 1970).

4. Counts 2–27, 29–38, and 40.

5. Counts 1, 28, and 39.

Arrest of Judgment, based on the lack of specificity in the indictment, was granted in part by the trial court, which thereupon entered a Judgment of Acquittal on Counts 2–27 and 29–38. A Judgment of Conviction was entered on Count 40, and Clark was sentenced to 3 years imprisonment and assessed a $10,000 fine. In No. 76–1145 Clark has appealed his conviction on Count 40, and in No. 76–1176 the United States has appealed the Judgment of Acquittal entered on the other 36 counts. The two causes have been consolidated on appeal.

Clark argues that Count 40 was not sufficiently specific and that he relied in good faith upon assurances from the Agricultural Stabilization and Conservation Service (ASCS) that his actions were legal, such reliance constituting a defense to Count 40. The United States argues that the requisite degree of specificity was present in each of the 36 counts on which the trial court entered a Judgment of Acquittal, as well as in Count 40. Also, the United States disputes the good faith reliance defense. Finding ourselves in agreement with the United States on all points, we affirm in No. 76–1145 and reverse in No. 76–1176.

Under the 1973 Upland Cotton Allotment program, the federal government, through the Commodity Credit Corporation (CCC), paid cotton producers an amount equal to the cotton yield per acre of their farmland (based on the land's farming history) times a certain sum per pound times the number of acres of cotton allotment given the land. The 1970 Act's § 101(1) limited the annual payments to no more than $55,000 per "person." Regulations promulgated by the Secretary of Agriculture included the following definition of "person":

"Subject to the provisions of [7 C.F.R. Part 795], the term 'person' shall mean an individual, joint stock company, corporation, association, trust, estate, or other legal entity. In order to be considered a separate person for the purpose of the payment limitation, in addition to the other conditions of [Part 795], the individual or other legal entity must:

(a) Have a separate and distinct interest in the land or the crop involved,

(b) Exercise separate responsibility for such interest, and

(c) Be responsible for the cost of farming related to such interest from a fund or account separate from that of any other individual or entity." 7 C.F.R. § 795.3.[6]

A person could "divide, sell, transfer, rent, or lease his property" if the parties to the transaction were bound legally by it. However, "[a]ny change in farming operations that would otherwise serve to increase the number of persons for application of the payment limitation [had to] be bona fide and substantive." 7 C.F.R. § 795.13(a).

To establish a context for evaluation of the indictment, we now consider Clark's actions against this statutory backdrop. Through the purchase and consolidation of three tracts of land, combined with a transfer of the cotton allotment to the consolidated farm (Serial No. F–429), Clark acquired a large, high cotton yield farming operation which, without the $55,000 limitation, would have brought in over a million dollars in cotton payments. Presumably thinking the $55,000 limitation too onerous, Clark next undertook a scheme designed to increase the lucrativeness of his farming investment.

From F–429, Clark carved out and leased several tracts of 530 acres each which, under the cotton allotment formula, were entitled to about $55,000 each in payments. Next, at the behest of Clark or someone acting on Clark's behalf, the lessees signed three ASCS forms[7] and a form giving Clark their power of attorney.

Pursuant to the lessees' assignments of payments, the CCC deposited the lessees' payments in bank accounts. Using his power of attorney, Clark then transferred these

---

**6.** All C.F.R. citations are to the 1973 version.

**7.** The three forms were Form ASCS–36 (Assignment of Payment), Form ASCS–516 (Intention to Participate and Payment Application), and Form ASCS–580 (Report of Acreage and Certification of Compliance).

funds into the account for the Clark Trust, such transfers being made as purported lease payments and reimbursements for farming expenses. Clark hired the people to clear, plow, and plant the land, and none of the lessees participated in the farming operations on the leaseholds.[8] Eventually, the lessees personally received a small portion, perhaps $3,000, of the CCC payment.

After all this, Clark (or the Clark Trust) had accumulated funds far in excess of the $55,000 per person limitation, with the flow of the funds being from the CCC, briefly through the lessees' assigned accounts, to the Clark Trust. The indictment ensued, alleging that false statements had been made to obtain the CCC payments, and, on appeal, the principal issue is whether the indictment alleged the false statements with the necessary specificity.[9]

In *Hamling v. United States*, 418 U.S. 87, 117–18, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), the Supreme Court said: "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense . . . .' [T]he language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged.'" (Citations omitted). *See also Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). More recently, an admonishment has come from this Circuit: "The validity of an indictment is determined from reading the indictment as a whole . . . and . . . must be determined by practical, not technical, considerations." *United States v. Markham*, 537 F.2d 187, 192 (5th Cir. 1976), *cert. denied*, 45 U.S.L.W. 3457 (Jan. 11, 1977) (citations omitted).

■ The indictment, a representative count of which is set out in the margin,[10] clearly contained the elements of the charged offense. It alleged that: (1) there was a statement; (2) it was false; (3) Clark made it or caused it to be made with knowl-

---

**8.** There were variations on this theme. Some tracts were sold, not leased. Some lessees neither gave their power of attorney to Clark nor signed the assignment of payment form. Whatever variation was played, the result for Clark was the same—the bulk of the CCC payment would settle in the Clark Trust.

**9.** Scrutiny of federal indictments is necessitated by the Fifth Amendment ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."), the Sixth Amendment ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ."), and Rule 7(c)(1) of the Federal Rules of Criminal Procedure ("The indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . "). The Fifth Amendment's due process clause is also implicated.

**10.** Count 5: "1. On or about [June 12, 1973], at Seminole, Texas, in the Lubbock Division of the Northern District of Texas, LONNIE D. CLARK, defendant, did wilfully make and cause to be made a false statement, knowing it to be false, for the purpose of influencing the action of the Commodity Credit Corporation,

an agency and instrumentality of the United States, and for the purpose of obtaining for himself and others, money, property and other things of value under Sections 714–714o, Title 15, United States Code and the Agricultural Act of 1970, Public Law Number 91–524, in that, for the purpose of obtaining 1973 Upland Cotton Crop payments from the Commodity Credit Corporation, LONNIE D. CLARK made and caused to be made a written statement on United States Department of Agriculture Assignment of Payment Form ASCS–36, assigning to the Seminole State Bank, Seminole, Texas, payments in the [name of Leslie Aiken] as a producer on Farm Serial Number F–429, Gaines County, Texas, for the 1973 Upland Cotton Program Year, whereas, in truth and fact, as LONNIE D. CLARK then well knew, the said [Leslie Aiken] was not then a person entitled to receive any such payments, the said statement being material to the lawfulness of the payment of said money to said Bank by the Commodity Credit Corporation, in violation of Title 15, United States Code, Section 714m(a) and Title 18, United States Code, Section 2."

With the exception of Count 40, discussed in the text *infra*, the other counts vary only in the names of the operator or producer and in the type of ASCS form mentioned.

edge that it was false; and (4) Clark made it or caused it to be made for the purpose of influencing CCC action or for the purpose of obtaining a thing of value under an act applicable to the CCC. These allegations embraced the elements of the offense. *See Jacobs v. United States*, 359 F.2d 960 (8th Cir. 1966).

■ The controversy is over whether the indictment sufficiently pointed out what the false statement was which was being alleged. The trial court felt it did not in Counts 2–27 and 29–38. Apparently, the trial court thought that the indictment alleged that a false statement had been made within the four corners of the ASCS forms, a reading encouraged by the indictment's wording which said that a written statement was made *on* an ASCS form. If the indictment is read this way, the trial court's Judgment of Acquittal was understandable since nowhere does the indictment indicate *which* statement was false.

However, the United States argues that the indictment's allegations were misconstrued, an argument we adopt. Paraphrasing the representative Count 5, note 10 *supra*, Clark made a written statement on the Assignment of Payment form, assigning payments said to be due Leslie Aiken as a producer, which payments Aiken was not entitled to receive in the first place. The very submission of the form constituted a written representation by Clark that Aiken had something to assign. This representation, not some word or words *on* the form, was the "statement" with which the indictment was concerned. Furthermore, its falsity was alleged specifically when the indictment said that Aiken was not entitled to the payments being assigned. In other words, Aiken had nothing to assign, yet indicated he did. (The other counts concerning the two other forms—Forms ASCS–516 and ASCS–580—are subject to similar analyses). The indictment's mention of the lessees' non-entitlement to cotton payments put Clark on notice that the crux of the government's case would be the invalidity of the lease arrangements. For practiced counsel such as Clark's to have

read the indictment without such insight is too unlikely to seriously consider. The notice clearly afforded Clark and his counsel a fair opportunity to prepare his case to try to show the validity in fact or law of the arrangements by which F–429 was split up. Therefore, Clark had notice of the specific offense he was said to have committed. Additionally, the indictment's specificity was such that Clark was protected from possible double jeopardy problems since no future prosecutions could be brought against Clark based on the forms' submission. *See Hamling, supra.*

That the indictment could have been more specific is certain. For instance, the indictment could have included allegations as to *why* the named producer or operator was not entitled to the payments. The indictment could have read that a written statement was made *by* the submission of an ASCS form instead of *on* an ASCS form. Yet, practicality sets limits on the details that can and should be in indictments, and courts are not required to read indictments as rigidly as civil pleadings were read in the heyday of the common law forms of action. *See Markham, supra.*

*Van Liew v. United States*, 321 F.2d 664 (5th Cir. 1963), on which Clark places primary reliance in his arguments concerning the requisite degree of specificity in the indictment, involved a much vaguer, more amorphous indictment than is at issue in this case. *Van Liew* was a case about "economic" misbranding and "economic" adulteration of an orange juice-like commodity. The indictment contained some specific allegations but, in certain instances, these allegations failed to speak to key elements of the claimed offenses. Furthermore, certain counts of the indictment left themselves open to alternative interpretations which would have resulted in separate criminal violations. That is, jeopardy problems were present. Also, due to the possible alternative interpretations, the defense would have been left in unfair confusion regarding what acts had constituted the claimed offense. Preparation of a defense would have been overly burdensome, since all pos-

sible variations would have had to be addressed. As we have shown, this case's indictment contained all the elements of the offense and specifically pinpointed the alleged false statement.

Count 40, which the trial court found specific enough, concerned a statement made on Form ASCS–580 (Report of Acreage and Certification of Compliance) that Clark Trust would not receive more than $55,000 under the cotton program. The alleged falsity was that Clark Trust received more than that amount. Thus, in Count 40, the false statement was alleged to have been made *in* the form. It was even more specific than the other counts which we have found specific enough. A fortiori, it too was sufficiently specific.

Defendant Clark's second argument on appeal is that his prosecution should have been precluded because all his actions were taken in good faith reliance on the approval of those actions by the Gaines County ASCS Committee.

■ The government may not "actively mislead" someone by authoritatively assuring him that an action is proper and, then, prosecute him for that action. *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). "Ordinarily, citizens may not be punished for actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach." *United States v. Laub*, 385 U.S. 475, 487, 87 S.Ct. 574, 581, 17 L.Ed.2d 526 (1967).

■■ *Raley* and *Laub*, however, did not involve prosecutions for fraudulent conduct. This case does. The essence of fraud is that the defrauded party (the CCC here) is misled by the party engaging in the fraud. The prosecution, as revealed in the indictment, was based on cotton payments being made to persons who were purported to be

eligible to receive them but who were, in fact, not eligible. Abundant testimony by staff members of the Gaines County ASCS office shows that the normal course of business, followed in this instance, was to rely on the truth of the various forms submitted.[11] The government was the party being actively misled by Clark, not vice-versa.

*United States v. Mann*, 517 F.2d 259 (5th Cir. 1975), *cert. denied* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976), cited by defendant, provides him no solace. In *Mann*, no active misleading by the government was found. *Mann* did suggest that widespread business practices, arguably illegal under federal statutes, coupled with an absence of prior prosecutions might require dismissal of an indictment under the *Raley-Laub* rationale. No evidence indicates that schemes similar to Clark's were commonplace under the 1973 cotton program. Additionally, the $55,000 limitation was relatively new and therefore an absence of prior prosecutions in the sense used in *Mann* is not present.

■ Finally, in regard to the defense of good faith reliance, note should be taken of the trial court's charge to the jury. The jury was instructed that a finding that defendant had, in good faith, relied upon assurances from the ASCS that the persons named in Counts 1 through 39 of the indictment were entitled to cotton payments would require a not guilty verdict. Such a verdict would have been necessary because the government would have failed to prove one of the elements of the offense—*knowledge* of the falsity of the statements. In this way, the issue of good faith reliance was a jury question and we have no quarrel with the jury's resolution of this issue against Clark.[12]

---

11. Some testimony and evidence even hints at the possibility of collusion between Clark and certain officials in the furtherance of his scheme. We express no views on those matters, but mention them to indicate that Clark may have relied upon certain ASCS officials not as federal agents assuring him of the legality of his actions, but as agents acting, wittingly or unwittingly, ultra vires to aid him in his illegal course.

12. Likewise, we accept the jury's resolution of another issue raised by Clark who argues that, though the indictment alleged one trust (the Clark Trust), the evidence supported a finding that there were four trusts. The trial court instructed the jury that, to be separate, the

Accordingly, the judgment of the trial court is AFFIRMED in No. 76–1145 and REVERSED in No. 76–1176.

trusts must have been administered separately and not as one entity. The guilty verdict was an implicit finding, amply supported by the evidence, that the Clark "trusts" were indeed one trust.