**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John H. THOMAS, et al., Defendants,**

**Lonnie D. Clark and John H. Thomas, Defendants-Appellants.**

**No. 82–1398.**

United States Court of Appeals, Fifth Circuit.

July 18, 1983.

Gordon Bynum, Houston, Tex., for Thomas.

William French Smith, Atty. Gen., William S. Liebman, Atty., Civ. Div., Commercial Lit. Branch, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before RUBIN and JOLLY, Circuit Judges, and PUTNAM *, District Judge.

PUTNAM, District Judge:

This appeal arises out of a civil action brought against John H. Thomas and Lonnie D. Clark, appellants, by the United States.[1] Under a four-count civil complaint, later amended, the United States sought to recover subsidy payments made pursuant to the 1973 Upland Cotton Program.[2] The action was based upon appellants' schemes whereby they and other participants received subsidy payments as a result of appellants' submission of false or fraudulent statements concerning eligibility to participate in the program.[3]

In 1973 the Department of Agriculture, through the Agricultural Stabilization and Conservation Service (A.S.C.S.), began administrative proceedings against Thomas, Clark and others. A county-level determination found appellants liable for refunds of the 1973 subsidy payments. Both Thomas and Clark appealed the county A.S.C.S. determination to the State A.S.C.S. commit-

Lonnie D. Clark and John H. Thomas, pro se.

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Jon-T Chemical Company and Jon-T Farms, Inc., were joined as co-defendants. The district judge severed the action against those two defendants. Appellants do not take issue with the severance.

2. The 1973 Upland Cotton Program was established pursuant to the Agricultural Act of 1970, Pub.L. No. 91–524, §§ 601–610; 84 Stat. 1358 (November 30, 1970). This program is fully explained in *United States v. Clark,* 546 F.2d 1130 (5 Cir.1977) and *United States v. Batson,* 706 F.2d 657 (5 Cir.1983).

3. Count I of the civil complaint alleged that Thomas, Jon-T Chemical Co. and Jon-T Farms, Inc., violated the False Claims Act, 31 U.S.C.A. §§ 3729–3731 (formerly 31 U.S.C.A. §§ 231–235), by submitting forty-two false or fraudulent statements for the crop years 1972 and 1973. Count II also alleged that Clark violated the same act by submitting twenty-seven such statements for the 1973 crop year. Count III alleged common law conversion by Thomas of five sight drafts. Count IV alleged as a cause of action money had and paid and, alternatively, money paid under a mistake of fact.

tee.[4] As to Thomas, no state determination was ever made. As to Clark, the county-level determination was affirmed by both the state committee and the deputy administrator for state and county operations. Under the applicable regulations, this became a final determination.

While the A.S.C.S. proceedings were being conducted, criminal actions were brought against appellants. The factual background of their fraudulent schemes are set forth in *United States v. Clark*, 546 F.2d 1130 (5 Cir.1977) and *United States v. Thomas*, 593 F.2d 615 (5 Cir.1979); modified on rehearing, 604 F.2d 450 (5 Cir.1979); affirmed, 617 F.2d 436 (5 Cir.1980). These opinions affirmed appellants' criminal convictions.[5]

In this action, the United States moved for summary judgment. The district judge granted the motion, but only as to liability. The appellee then moved again for summary judgment on the issue of damages. The district judge granted the motion against Thomas on Counts I and III and against Clark on Count II. The district judge entered judgment against Thomas for $4,787,-604.20 and against Clark for $1,899,955.74. This appeal followed. For the reasons set forth below, we AFFIRM.

Thomas' first argument is based upon the doctrine of election of remedies. Thomas argues that the doctrine bars this action in light of the United States having abandoned the A.S.C.S. proceedings. The United States argues that the doctrine has no application in this case, because Thomas himself moved for and obtained a stay of these proceedings at the State level.

The doctrine of election of remedies is aimed at the prevention of double recovery and precludes a litigant pursuing a remedy, which in a previous action, he rejected in favor of an alternative and inconsistent remedy. *Landry v. Carlson Mooring Service*, 643 F.2d 1080 at 1087 (5 Cir.1981); *U.S. etc. v. Weiss Pollution Control Corp.*, 532 F.2d 1009 at 1012 (5 Cir.1976). There exist three essential elements for the application of the doctrine and these are: (1) the existence of two or more remedies (2) the inconsistency of such remedies, and (3) a choice of one of them. See also: 25 Am. Jur.2d, Election of Remedies §§ 8, 22, 23; 1B, Moore's Federal Practice, ¶ 0.405[7], p. 762.

The United States has clearly sought recovery under two avenues, i.e., administrative proceedings and a civil action. The basis for both actions was that Thomas had made false statements to the United States concerning eligibility requirements under the Upland Cotton Program.[6] The doctrine of election of remedies has no application.

Clark attacks the propriety of summary judgment relating to liability on two grounds. First, he argues that his constitutional rights were violated by the denial of a hearing before the deputy administrator.[7] Second, he contends civil liability was improperly predicated on his criminal conviction on several counts that were subsequently dismissed. As to the second contention, the United States argues that the lower court properly applied the doctrine of collateral estoppel to find Clark liable under the False Claims Act.

To establish a violation of the False Claims Act, the United States must demon-

4. The appeal procedure is set forth at 7 C.F.R. §§ 780.1–780.12.

5. Thomas' conviction on Count 92, criminal conversion of a subsidy payment to Herbert E. Blackstock, was reversed on appeal. 604 F.2d 450 (5 Cir.1979).

6. Thomas' reliance on *Baldridge v. Hadley*, 491 F.2d 859 (10 Cir.1974) is misplaced. Although, as in this case, the facts were the same in both the administrative and civil actions, the United States was in fact seeking different remedies,

i.e., rescission of a contract administratively and damages in the civil action. In this case, the United States was not required to alter its theory of recovery.

7. The facts simply do not support this argument. He was granted a hearing before the deputy administrator who made a final determination of his case on May 5, 1978. See attachment C to plaintiff's reply filed February 11, 1982.

strate, by a preponderance of the evidence, that the defendant possessed guilty knowledge or guilty intent to cheat the government. *United States v. Aerodex, Inc.,* 469 F.2d 1003 (5 Cir.1972); *United States v. Gardner,* 73 F.Supp. 644 (N.D.Ala.1947); 26 A.L.R.Fed., False Claims Act-Specific Intent, § 3, pp. 313–316. The United States established in the course of the criminal action, that Clark made statements, known by him to be, and that were in fact, false, for purposes of obtaining payments from the Commodity Credit Corporation. See *United States v. Clark,* supra, 1133–1134; 15 U.S.C.A. § 714m(a).

■ Collateral estoppel precludes litigating an issue if the identical question has been litigated in a prior suit which could not have been decided without its resolution. *In the Matter of Raiford,* 695 F.2d 521 (11 Cir.1983); *Johnson v. United States,* 576 F.2d 606 at 615 (5 Cir.1978). It is an equitable doctrine and its application, considered in light of fairness to both parties, rests within the broad discretion of the lower court. *Nations v. Sun Oil Co.* (Delaware), 705 F.2d 742 (5 Cir.1983); *Johnson v. United States,* supra. Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action. *In The Matter of Raiford,* supra, at 523.

■ The trial judge presided over both the criminal and civil actions against Clark and was thoroughly acquainted with the facts of these cases. In granting the United States' motion for summary judgment he carefully limited the relief to those claims upon which Clark had been convicted in the criminal prosecution. Clark has not come forward with proof to sustain his position that the criminal and civil judgments were incorrect. The facts established by the government are uncontested. Under these circumstances summary judgment

may be utilized. 6 Part 2, Moore's Federal Practice, ¶ 56.17[52], p. 56–1048; Wright, Miller & Kane, Federal Practice and Procedure: Civil, 2d § 2735, pp. 429–434.

■ In order to recover double damages under the False Claims Act, the United States must show that its losses were actually sustained as a result of defendants' false or fraudulent statements. *United States v. Miller,* 645 F.2d 473 (5 Cir.1981); *United States v. Aerodex, Inc.,* supra, 35 A.L.R. Fed. Damages Under False Claims Act, § 11, pp. 837–841. The damages must be doubled and then reduced by the amount of any previous payments made on the claim.[8] *United States v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976).

In support of its motion, the United States has filed copies of 47 sight drafts paid by the Commodity Credit Corporation to persons represented by Thomas to be eligible to receive those payments under the program. (Record on Appeal 1222–1363. See also: Affidavit of Thomas R. Mura, Record on Appeal, pp. 1365–1373.) Forty-two of these drafts formed the basis for Count I of the civil complaint; recovery of the payments for the five remaining drafts is sought under Count III.

■ Thomas argues that the United States has failed to show its actual damages, and further that any damages proven should be reduced to the extent of any benefits received by the government as a result of the payments. His argument that the amount of damages is in dispute because the government has benefitted from increased production resulting from his cotton operations is specious.[9] The rule Thomas seeks to apply is fully discussed in 35 ALR Fed, Damages Under False Claims Act, § 7(a). The district judge considered this argument and rejected it. We agree.

■ With respect to the five sight drafts upon which Count III is based, the

---

8. One of the participants in Thomas' scheme had previously reimbursed the United States $15,500.00.

9. We accept without dispute that Thomas was engaged in actual agricultural operations. See Thomas' deposition, pp. 64–66 (Record on Appeal, pp. 1766–1768).

United States has established the prima facie value of the drafts, i.e., their face amount. The burden then shifted to Thomas to establish the actual value of the drafts. See 18 Am.Jr., 2d, Conversion, §§ 113 and 161. Aside from his "use benefits" argument, Thomas has failed to dispute the value of the drafts as required by Federal Rules of Civil Procedure, Rule 56(e), 28 U.S.C.

Clark's position is that the amount of the judgment against him is excessive and should be reduced to the extent that individuals who had participated in his scheme were thereafter found to be bona fide producers under the Upland Cotton Program. Count II of the complaint sought to hold him liable for twenty-seven sight drafts paid by the Commodity Credit Corporation. The affidavit of Clifton E. Adams, Chief, Administrative Appeals Branch, A.S.C.S. (Record on Appeal, pp. 1466–1473), reveals that nine of these producers were found by his agency to be bona fide. The remaining producers and the payments to them form the bases for the appellee's motion. (Record on Appeal, p. 307.) Adams' affidavit establishes that they received subsidy payments.[10] Five of them settled with the United States and the district judge properly reduced the double damages award to the extent of the settlement. *United States v. Bornstein*, supra.

The judgment appealed from is AFFIRMED.

---

**10.** The United States has also filed copies of these sight drafts along with the affidavits of Thomas R. Mura, an A.S.C.S. systems accountant, and Pauline Roberson, an A.S.C.S. Gaines County employee. See Record on Appeal, pp. 850–916.