**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lonnie Dwain CLARK, a/k/a Chick Clark, Defendant-Appellant.**

Nos. 84–1098, 84–1099
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 31, 1984.

John T. Montford, Lubbock, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., Roger L. McRoberts, Asst. U.S. Atty., Lubbock, Tex., for plaintiff-appellee.

Appeals from the United States District Court for the Northern District of Texas.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This Court has before it two separate appeals by Lonnie D. Clark which have been consolidated for purposes of review. No. 84–1098 involves an appeal from the revocation of probation of sentences in a case involving Clark's conviction on numerous counts of defrauding the United States government under the 1973 Upland Cotton Allotment Program. No. 84–1099 is an appeal from a conviction for receiving a fire-

arm which had been transported in interstate commerce after conviction of the other felonies. Since the revocation of probation was in part based upon the firearm conviction, we turn our attention to the firearm conviction first.

### No. 84–1099—Receipt of Firearm Conviction

In appellant's prosecution for receipt of a firearm by a convicted felon, the parties stipulated to the fact that Clark was a convicted felon. A probation officer testified that he had warned Clark that it was illegal for him to receive or possess firearms. Clark had acknowledged in a signed document that he had received such a warning. The government also introduced an excerpt from Clark's deposition, given about four months prior to the date alleged in the indictment, in which he stated that he knew that he could not carry a firearm because he was a felon. The government established that the firearm involved, a .38 derringer, had been transported from Florida to Texas in 1980.

The employer of Clark's wife, Ms. Nicholson, testified that she bought the derringer in Brownfield, Texas, in December 1980. She testified that on August 12, 1983, she had placed it in her briefcase along with some checks, cash, and legal papers. She had put the briefcase in Clark's automobile when she and Clark had gone to look at some land. When they returned to Brownfield, Ms. Nicholson forgot to take her briefcase from Clark's car.

Lubbock police officer Schwertner testified that on the evening of August 13, 1983, while responding to a disturbance call, he observed Clark come around the corner from 73rd Street to Albany Street, walk down the sidewalk on Albany and place an object in the grass near a fence. About the time his backup unit arrived, Schwertner stopped Clark and pointed out the location near the fence to Officer Fahrlander. Fahrlander recovered the derringer at that location and appellant was arrested.

Clark testified in his own defense. He claimed that he had not noticed Ms. Nicholson leave her briefcase in his car on August 12. On August 13, after having seen his girlfriend Ms. Ehlo earlier at her house in Lubbock, he returned to her house at about 6:00 p.m. He found a note saying that she was at a friend's house, the Denslow's. He further testified that while putting some things in his car, he found Ms. Nicholson's briefcase in the back seat. He opened it and saw the derringer. Clark testified that he then went to the friend's house. When he went to the door, Paul Miller came to the door. Clark asked to see Ms. Denslow, but Miller told him that she did not want to talk to him. Clark testified that Miller then called him an S.O.B. and told him to leave. Clark said that he did not know why he did not ask for Ms. Ehlo. Clark started to leave, but then returned. Clark testified that the derringer was still in the briefcase. He and Miller began to fight after Miller told him he could not see Ms. Ehlo, and Miller again cursed Clark. Clark testified that Miller then got into Clark's car and was emerging from it with the gun when Clark took it away from him. When the fight stopped, Clark took the derringer and dropped it where the officers said he did.

Clark testified that he was a convicted felon and that at the time he discovered the derringer in his car, he knew that he was prohibited from receiving or possessing firearms. He testified that nothing prevented him from earlier putting the gun in Ms. Ehlo's house when he first discovered it or from locking it in the trunk of his car.

Lubbock County Deputy Sheriff B.J. Green, a friend of Clark, testified that about 2:00 a.m. on August 14, 1983, Clark came to Green's home. Clark told him in general the same story that he later related on the witness stand about the fight with Miller at the home of Ms. Ehlo's friend except for one highly significant difference. Early in the morning of August 14, Clark told the deputy sheriff that when Miller told him to leave he got into his car and backed out of the driveway, but then pulled back into the driveway. Clark then told the deputy sheriff he took the derringer from the briefcase, put it in his pants

pocket and returned to the door. At that time the fight took place. Clark also related the fact that he had dropped the gun in some grass near a fence and the police had found it there.

Clark contends that the evidence of his guilt was insufficient because (1) the government failed to establish a nexus between the firearm and interstate commerce; and (2) the government failed to prove his "receipt" of the firearm as required by 18 U.S.C. § 922(h) (1982).

As the Supreme Court held in *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942): "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." The reviewing court must make all of the reasonable inferences and credibility choices which will support the jury's verdict. *United States v. Gant*, 691 F.2d 1159, 1161 (5th Cir.1982); *United States v. Squella-Avendano*, 478 F.2d 433, 435 (5th Cir.1973). In *United States v. Bell*, 678 F.2d 547 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), we said:

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

678 F.2d at 549 (footnote omitted). The scope of review is the same whether the evidence is direct or circumstantial. *Id.* n. 3.

Clark argues that there was insufficient proof of a nexus between the derringer and interstate commerce because it had been purchased by a third person and inadvertently left in his car. In *Barrett v. United States*, 423 U.S. 212, 225, 96 S.Ct. 498, 505, 46 L.Ed.2d 450 (1976), however, the Court held that section "922(h) covers the *intrastate receipt*, such as petitioner's purchase here, of a firearm that

previously had moved in interstate commerce." (Emphasis added) Moreover, the government is not required to prove that the defendant's receipt of a firearm took place within a short time after its interstate movement. *United States v. Kilburn*, 596 F.2d 928, 934 (10th Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979); *United States v. Haddad*, 558 F.2d 968, 971 (9th Cir.1977). Under the proper standard of review there was ample evidence to establish the requisite connection between the weapon and interstate commerce.

Clark's more serious argument is that the evidence did not prove that he "received" the firearm under 18 U.S.C. § 922(h)(1), but rather proved merely possession in violation of 18 U.S.C.App. § 1202(a) (1982). Section 922(h)(1) makes it illegal for a convicted felon to receive a firearm which has been shipped or transported in interstate or foreign commerce. Section 1202(a), on the other hand, makes it illegal for a convicted felon to receive, possess, or transport in commerce any firearm. Clark's argument is based on his assumption that because the derringer was inadvertently left in his car, he did not receive it at that time in violation of section 922(h). The jury had the right to believe, however, the testimony of the deputy sheriff that Clark told him that he knowingly took possession of the gun from the briefcase, just prior to confronting Miller the second time.

This Court held in *United States v. Hammons*, 566 F.2d 1301, 1303 (5th Cir.), *vacated and remanded on suggestion of the Solicitor General*, 439 U.S. 810, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978), that knowingly taking possession of a firearm constitutes "receipt" in violation of section 922(h). *Accord United States v. Griffin*, 705 F.2d 434, 437 (11th Cir.1983); *United States v. Lipps*, 659 F.2d 960, 962 (9th Cir.1981); *United States v. Turnmire*, 574 F.2d 1156, 1157 (4th Cir.1978); *United States v. Craven*, 478 F.2d 1329, 1336 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973).

■ Appellant also attempts to assert an "emergency or exigent circumstances" defense to an alleged violation of 18 U.S.C. § 922(h). On two previous occasions this Court implied that such a defense was available in a prosecution under 18 U.S.C. § 922(h), although on both occasions this Court declined to identify what set of facts would trigger the defense. *See United States v. Scales*, 599 F.2d 78, 80 (5th Cir. 1979); *United States v. Hammons*, 566 F.2d at 1303. This Court has, however, defined a four-part test concerning the so-called justification defense in a prosecution under 18 U.S.C.App. § 1202(a)(1). *United States v. Gant*, 691 F.2d at 1162. That four-part test requires the defendant asserting the justification defense to show

(1) that defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury," ... (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]," ... (3) that defendant had no "reasonable, legal alternative to violating the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened harm,'" ... and (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

*Id.* (citations and footnotes omitted) (brackets in original). Since the basic issue involved in a prosecution under either 18 U.S.C. § 922(h) or 18 U.S.C.App. § 1202(a)(1) is the same—receipt or possession of a firearm by a convicted felon—, we adopt the *Gant* four-part test for determining whether a defendant has successfully asserted the justification defense in a prosecution under 18 U.S.C. § 922(h).

■ In this case, we find, however, that the record contains ample evidence to support the conclusion that Clark knowingly and intentionally took possession of the derringer under circumstances which do not support a justification or "emergency or exigent circumstances" defense. Deputy Green's testimony, and to some extent Clark's own testimony, shows that when Clark went to Ms. Denslow's door (1) he was not under an imminent threat such as would induce a well-grounded apprehension of death or serious bodily injury; (2) he recklessly and negligently placed himself in the unlawful situation by going to the door and by putting the gun in his pocket; (3) he had other reasonable legal alternatives; and (4) while there was a causal relationship between the criminal act and avoidance of the alleged threatened harm, there was insufficient threat of harm to Clark, Ms. Ehlo, or Ms. Denslow to justify Clark in arming himself with the pistol.

■ Appellant Clark also contends that it was error for the judge to omit certain requested instructions. The first of these was directed at the fact that the gun had been left in the car inadvertently by a third person. There was no dispute about this, but this was not the "receipt" of the weapon which was the heart of the government's case. Appellant also requested an instruction that unlawful "receipt" did not include the innocent handling of a pistol or acquiring temporary possession of a pistol through inadvertence or mistake. This instruction was based upon Clark's testimony that Miller had taken the gun from the briefcase and he took it away from Miller. This, of course, was not the story he told the deputy sheriff, a friend, later the same night. In any event, this theory of justification for "receipt" of the weapon was adequately covered by the instructions which were given.

The court's charge incorporated the law relative to this defense as stated in *Gant*, 691 F.2d at 1162. Furthermore, the court instructed the jury that Clark could not be found guilty unless he *knowingly* received the firearm. The court then charged that " 'knowingly,' as that term has been used ... in these instructions, [meant] that the act was done voluntarily and intentionally and not because of mistake or accident." Thus, the instructions covered both a "justification" defense or a "mistake" defense.

The instructions actually given were legally correct and they gave the jury an adequate understanding of the case. *See United States v. Malatesta*, 583 F.2d 748, 759 (5th Cir.1978), *modified in another respect*, 590 F.2d 1379 (5th Cir.1979) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777, 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979).

Clark's final contention is based upon the fact that due to a death in Judge Woodward's, the trial judge, family, Judge Belew presided over the final day of the trial and charged the jury. There was no objection raised at trial. Clark personally acquiesced. Clark now contends, however, his due process rights were violated by Judge Belew's failure adequately to familiarize himself with the record.

Fed.R.Crim.P. 25(a) provides:

During Trial. If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

Pursuant to the rule, Judge Belew certified that he familiarized himself with the record. Judge Belew discussed the case with Judge Woodward's law clerk, read a transcript of Deputy Green's testimony, and had available a written summary of the evidence, which was prepared by the law clerk.

In *United States v. Boswell*, 565 F.2d 1338 (5th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978), this Court found a violation of Rule 25 when the trial judge permitted a magistrate to sit during jury argument without having certified that he was familiar with the entire record. The Court held, however, that the error was not grounds for reversal because there was no showing that any substantial right of the defendant was prejudiced. *Id.* at 1341.

■ The only prejudice alleged by Clark is that because Judge Belew did not familiarize himself sufficiently with Ms. Nicholson's testimony, he failed to instruct the jury properly concerning the defensive theory: inadvertent leaving of the gun in the car. As has already been pointed out above, how the gun got into Clark's car is irrelevant to the charge under which he was convicted. This ground of appeal is wholly without merit.

■ We conclude that no grounds exist for a successful challenge of the conviction of Lonnie Clark for receiving a firearm which had been transported in interstate commerce after he had been convicted of another felony. With the conviction not subject to challenge, it could properly be used as one of the grounds to revoke his probation given in connection with his conviction for fraudulently obtaining payments from the United States government under the 1973 Upland Cotton Allotment Program. We, therefore, now turn our attention to case No. 84–1098 which consists of his appeal from the denial of his challenges to the revocation of probation for the above offenses.

### No. 84–1098—Revocation of Probation

In 1977 this Court affirmed Clark's convictions on one count and reinstatement of convictions on 36 counts of making or causing to be made false statements to obtain payments under the 1973 Upland Cotton Allotment Program. *United States v. Clark*, 546 F.2d 1130, 1132 (5th Cir.1977). The facts showed that Clark had fraudulently obtained more than one million dollars from the United States government under the Upland Cotton Allotment Program.

Clark was sentenced to serve three years, to pay fines totalling $190,000, and to three additional years probation. A special condition of probation was that Clark's fine be paid by January 1, 1981. Part of the fine was paid with money which Clark had deposited for that purpose and for bail. On grounds that Clark had not made a conscientious effort to pay the remaining $169,760 of the fine, the district court, in

February 1982, after a hearing in which Clark was represented by counsel, extended his probation for two years, to April 26, 1984.

After an evidentiary hearing in January 1984, the court found that Clark had violated three special terms of probation: (1) that he refrain from violating the law (the firearm violation of which he was convicted); (2) that he pay the entire fine imposed; (3) that he make "all reasonable efforts possible" to pay the remainder of the fine (the court found that Clark had given "considerable" sums of money in the form of gifts and payments to Ms. Ehlo which he had no obligation to pay). The court then sentenced Clark to serve concurrent three-year terms on Counts 29 through 38, concurrently with his 18-month firearm sentence.

In this appeal Clark contends that the revocation of his probation placed him twice in jeopardy in violation of his Fifth Amendment rights. He argues that "the extension [of his probation in 1982] was granted merely to collect an impermissible fine at a time when the Defendant was a pauper. Hence, at the time of his revocation on January 19, 1984, the Defendant was again placed in jeopardy for a crime for which he had already served the probationary term." He also asserts generally that the extension of time on the probation was not justified.

 The fines imposed were each within the legal limit of $10,000, 15 U.S.C. § 714m(a) (1976); and the time for appealing from their imposition has long since expired. Fed.R.App.P. 4(a). Further, the district court did not extend Clark's probation in 1982 for failing to pay his fine, but for failing to make a conscientious effort to pay or attempt to pay it.

Section 3651 of 18 U.S.C. provides, in relevant part:

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums;

Since payment of a fine can be made a condition of probation, failure to pay the fine is grounds for revocation. Any ground for revocation would be more than sufficient to justify extension of the term of probation. Indeed, the term of a probation can be extended even though no violation of probation has occurred. *United States v. Briones-Garza*, 680 F.2d 417, 424 (5th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982).

 This same case, *Briones-Garza*, also states the rule that the district court with respect to revoking probation must act in its "sound discretion". *Ibid.* Our review of the action of the district court, then, must be based upon an inquiry as to whether it abused its discretion. It is completely clear that the district court did not err in extending Clark's probation for the reasons then given. Clark not only had failed to pay the $169,760 owing on his fine, he had not even made a conscientious effort to pay it. Contrary to Clark's argument, it is surely in the best interests of society that a person convicted of an offense pay a fine which has been imposed as part of his sentence. Appellant has made no showing that implicates in any way the constitutional protection against double jeopardy by the later revocation of the earlier extended probation or reveals an abuse of discretion in the district court in the earlier extension of the probationary period.

 Appellant Clark's final contention is that he is entitled to be discharged because of the way in which the district court pronounced sentence. Sentence was pronounced orally as follows: "Because of these reasons, and under the law the motion to revoke probation is granted, and you will serve the remainder of the three-year term imposed on you by Counts Twenty-Nine through Thirty-Eight." Clark argues that the district court's pronounce-

ment is open to two constructions: (1) the district court intended to sentence him to confinement until April 26, 1984, the end of the two-year extension; or (2) the court was under the mistaken view that the three-year term ended April 26, 1984.

This argument is frivolous, because the district court did not even mention April 26, 1984. Nor did the judge suggest that he thought that service of the concurrent three-year terms would be completed on that date, which would occur only three months and a week after he pronounced the sentence. The written judgment also clearly provides for service of the three-year terms.

Clark relies upon the established proposition that where there is a conflict between the oral and the written versions of a sentence, the former is controlling. *United States v. Kindrick*, 576 F.2d 675, 676 (5th Cir.1978). In the instant case, however, there is no conflict. At best, from appellant's viewpoint the oral pronouncement arguably is ambiguous. In such a case, "[t]he actual intention of the sentencing judge is to be ascertained both by what he said from the bench and by the terms of the order he signed, or from his total acts." *Scott v. United States*, 434 F.2d 11, 20 (5th Cir.1970), *quoted in Schurmann v. United States*, 658 F.2d 389, 391 (5th Cir.1981). From the record as a whole, it is clear that the district court intended for Clark to serve his ten three-year concurrent sentences.

In addition to these sentences, the court also made clear that they were to be served concurrently with his 18 month sentence on his conviction of receiving, as a convicted felon, a firearm which had been transported in interstate commerce.

The Court finds no error in appellant's firearm conviction, No. 84–1099, nor in the revocation of his probation and direction to serve three-year concurrent terms on his conviction of ten stated counts for defrauding the government, No. 84–1098.

No. 84–1098, AFFIRMED.

No. 84–1099, AFFIRMED.