EDITH HOLLAN JONES, Circuit Judge.
 

 This case sadly illustrates the peril of practicing law in an unfamiliar subject area, for, as one attorney has learned, ignorance of the law does not excuse an offense.
 

 Bankrupt businessman William E. De-vine and his attorney Weldon Parkhill were convicted of fraudulent concealment and transfer of assets from the debtors’ estates in violation of 18 U.S.C. §§ 2 and 152.
 
 *613
 
 They seek reversal of their convictions, With regard to three of the counts, they urge that the trial court constructively amended the indictment and abridged their right to a unanimous jury verdict by refusing to restrict the jury charge to the language of the indictment. With regard to all five of the counts, they say there was insufficient evidence to sustain the guilty verdict. Because we find these contentions to be without merit, we affirm the convictions.
 

 I.
 
 The Facts
 

 In 1981 and 1982, Devine, a self employed businessman with a 20 year background in the oil and gas drilling industry, and Parkhill, a practicing attorney for more than 30 years, maintained offices in the same building in Grand Prairie, Texas. In July of 1981, Parkhill’s firm helped incorporate Devine Drilling Incorporated (“DDI”), the company under which Devine conducted his oil and gas drilling business. In February of the following year, Parkhill incorporated WSD Enterprises, Inc. (“WSD”), a trust Devine set up for his wife and son. Parkhill, along with Devine’s son, was an incorporator of WSD and also served as its president.
 

 On March 18, 1982, creditors filed an involuntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701
 
 et seq.
 
 against Devine personally. At the time, Devine owned three tracts of land in Cooke County, Texas in his name. In early April 1982, Devine filed a response essentially admitting the allegations of the involuntary petition. 11 U.S.C. § 303(d). On April 28, Devine conveyed the Cooke County land to WSD, free and clear of any encumbrances. Devine was adjudicated an involuntary debtor on June 24 and a trustee was appointed for his estate. Shortly thereafter, Devine’s first attorney having withdrawn from the representation due to the unresponsiveness of the client, Parkhill became Devine’s bankruptcy counsel. Parkhill had never handled a bankruptcy case. When Devine, with Parkhill’s assistance, filed the schedule of his individual assets and liabilities in August, no mention was made of the Cooke County land.
 

 The trustee for Devine filed a complaint to adjudicate WSD, DDI and Baywestward Oil, Inc., another of Devine’s corporate entities,
 
 [1]
 
 as alter egos and so bring their assets and liabilities into the Devine Chapter 7 proceeding. To avoid a trial, Parkhill entered into a dispositive stipulation with the trustee at a bankruptcy court hearing on October 4, 1982. It was stipulated before Bankruptcy Judge Dean Gandy that on or before November 1, 1982, Parkhill would file (1) voluntary Chapter 11 petitions on behalf of WSD and DDI and (2) a motion to convert Devine’s Chapter 7 to Chapter 11. If this stipulation was not carried out, the agreement continued, an order declaring WSD and DDI to be alter egos of Devine would be submitted to the bankruptcy court and signed on, or shortly after, November 2, 1982, without further notice or hearing. Subsequently, the bankruptcy court entered an order embodying that agreement (the “Conversion Stipulation”).
 

 Seeking to comply with the Conversion Stipulation, Parkhill filed, on October 29, a pleading labelled “Debtors’ Motion For Conversion From Chapter 7 to Chapter 11 of the United States Code.” The pleading, verified by Devine, identified as debtors Devine, WSD and DDL It recited the general terms of the Conversion Stipulation and the debtors’ intent to carry out its terms. It stated that, “The Debtors are eligible to be debtors under Chapter 11 of the U.S. Code and desire to convert this case to a case under Chapter 11....” The named entities prayed for relief under Chapter 11. As far as Parkhill was concerned, according to his testimony and several pleadings filed for him during the criminal case, the effect of this inelegant
 
 *614
 
 pleading
 
 [2]
 
 was to commence a Chapter 11 bankruptcy case for WSD and DDI and to convert Devine’s personal Chapter 7 to a case under Chapter 11.
 

 Acting out of an abundance of caution, counsel for the trustee resubmitted De-vine’s “Debtors’ Motion” and submitted an order adjudicating the entities as alter egos to Judge Gandy, and on November 10, the bankruptcy judge signed the order. The order was not entered on the court’s docket until November 18, 1982.
 

 In the interim, on November 12, 1982, Devine, again with Parkhill’s assistance, transferred the Cooke County land tracts and four motor vehicles registered in the name of DDI to a third party for a total sum of $150,000, which Devine received. Amended bankruptcy schedules filed for Devine, WSD and DDI in the following month did not list the DDI vehicles, and they characterized the sale of the Cooke County land as a secured transaction.
 

 Devine and Parkhill were indicted on August 7, 1984 on five counts of violating 18 U.S.C. §§ 2 and 152.
 
 [3]
 
 Counts 1 and 2 charged both with knowingly and fraudulently concealing the land tracts and the vehicles from the debtors’ trustee and creditors. Counts 3, 4 and 5 charged both with knowingly and fraudulently transferring the land tracts and vehicles belonging to the bankruptcy estate. Devine and Park-hill pleaded not guilty. After a jury trial, Devine was found guilty on all five counts, and Parkhill on Counts 2, 4 and 5.
 
 [4]
 

 Counts 2,
 
 4
 
 and 5.
 

 Both defendants contend that the trial court constructively amended Counts 2, 4 and 5 of the indictment by allowing the government to introduce evidence on what they describe as a “theory of liability” that was not alleged in the indictment. The relevant language of Counts 2, 4 and 5 of the indictment states:
 

 A. On November 10, 1982, the Bankruptcy Court ... ordered that WSD Enterprises, Inc., Devine Drilling, Inc. ... be adjudicated as alter egos of William E. Devine and that the style of the proceeding be amended from “In re William E. Devine” to “In re William E. Devine, d/b/a WSD Enterprises, Inc., Devine Drilling, Inc.,....
 

 The second prong of this argument is that the trial court’s refusal, over defendants’ objection, to embody the November 10 order alleged in the indictment in the charge to the jury violated their right to a unanimous jury verdict, in contravention of Article III, Section 2 of the Constitution and the Sixth Amendment.
 
 [5]
 

 
 *615
 
 Defendants rely on the settled rule that, after the return of an indictment, its charges may not be broadened through amendment except by the grand jury itself.
 
 Ex Parte Bain,
 
 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). Equally settled, as defendants note, is the rule that a trial court’s amendment of an indictment can be an implicit or constructive one, which is reversible per se.
 
 Stirone v. United States,
 
 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). This court extensively reviewed the law regarding constructive amendments in
 
 United States v. Young,
 
 730 F.2d 221, 223 (5th Cir.1984):
 

 The accepted test is that a constructive amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged (citations omitted). In such cases, reversal is automatic, because the defendant may have been convicted on a ground not charged in the indictment (citations omitted).
 

 Devine and Parkhill maintain that the references to the November 10 order in the indictments must be construed as an allegation that WSD and DDI were in bankruptcy on November 12, 1982, the date of the offenses charged in Counts 2, 4 and 5, by virtue of one event, and one event alone, namely the signing of the alter-ego order on November 10, 1982. Relying on Bankruptcy Rule 9021(a), Parkhill and Devine contend that this order did not become effective as an order of the bankruptcy court, as a matter of law, until it was entered on the docket on November 18, 1982. Accordingly, WSD and DDI were not alter-egos of Devine on November 12, 1982, the date of the offending property transfers, and although Devine had been adjudicated an involuntary bankrupt, neither WSD nor DDI was in bankruptcy on that date by virtue of the November 10 order. On this basis, they state, Counts 2, 4 and 5 are legally insupportable.
 

 This argument is completely unpersuasive. First, WSD and DDI were in bankruptcy on November 12, 1982, and the defendants have never denied this. Their suggestion that the precise date or manner in which they got there is an “essential element of the offense charged,” would, if adopted, elevate formalism in indictments to an untenable level. Defendants cite no authority on point,
 
 [6]
 
 and it appears rather that such data are not essential elements of an offense committed under 18 U.S.C. § 152. Compare
 
 United States v. Beery,
 
 678 F.2d 856 (10th Cir.1982), where an inconsistency in the exact date of a transfer illegal under 18 U.S.C. § 152 was held not to be a fatal flaw in the indictment. The statute requires only that a party be
 
 in bankruptcy
 
 on the date of the transfer, and the status of being in bankruptcy is the essential element of the offense. See
 
 United States v. Guiliano,
 
 644 F.2d 85, 87 (2d Cir.1981). Thus, even if the defendants’ indictment erred in its recitation of the pertinent events resulting in the bankruptcy of WSD and DDI, which it did not, any such error was immaterial.
 

 Second, defendants’ reliance on Bankruptcy Rule 9021(a) to suspend the effectiveness of the November 10 order pending its entry on the docket is misplaced. Bankruptcy Rule 9021(a) was adapted from Fed.R.Civ.P. 58, and both rules govern the finality of judgments for purposes of appeal and execution. To this end, Rule 9021(a) provides:
 

 (a) Original Entry of Judgment of Bankruptcy Court. Subject to the provisions of Rule 54(b) F.R.Civ.P.: (1) on a
 
 *616
 
 general verdict of a jury, or on a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign and enter the judgment without awaiting any direction by the court; (2) on a decision by the court granting other relief, or on a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document. A judgment is effective when entered as provided in Rule 5003. Entry of the judgment shall not be delayed for the taxing of costs.
 

 Both rules assume that the order or judgment of the bankruptcy court or district court is an appealable order.
 
 [7]
 
 The November 10 order in this case was not an appeal-able order, because it merely implemented the Conversion Stipulation order arising out of the October 4 hearing, which finally and fully, albeit conditionally, set forth the rights of the parties in regard to the trustee’s complaint to declare WSD and DDI the alter egos of Devine. Pursuant to the Conversion Stipulation order, defendants were required to place Devine, WSD and DDI voluntarily under the auspices of Chapter 11 of the Bankruptcy Code by November 1, 1982, or an order would be entered, without further hearing, adjudicating the corporations as alter egos of De-vine. The appealable order was this Conversion Stipulation order which was timely entered on October 27 pursuant to Bankruptcy Rule 9021(a). The November 10 order enforced, but did not alter, the Conversion Stipulation order. According to C. Wright, A. Miller and M. Kane, 10 Federal Practice and Procedure § 2651 (1983 ed.),
 

 ... the court may enter a final and ap-pealable judgment and still retain jurisdiction over the action so as to make sure that its order is applied correctly.
 

 Id. at 15.
 
 [8]
 
 Bankruptcy Rule 9021(a) thus affected only the earlier order. The indictment reasonably construed the actual result of the proceedings in the bankruptcy court.
 

 Third, even if the November 10 order were an appealable order, triggering Rule 9021(a), it is arguable that defendants should be estopped to advert to it in this case because, by virtue of the Conversion Stipulation, they had agreed in advance to its terms. A party who has entered into a valid and binding settlement of litigation is precluded from seeking further or contradictory relief,
 
 Hyman v. McLendon,
 
 140 F.2d 76 (4th Cir.1944), and this principle would, in the usual case, preclude his pursuing an appeal of an order entered to enforce the settlement. Defendants’ submission to the Conversion Stipulation order prevents them from adventitiously citing a rule governing the time for appeals that has no relevance to their rights concerning the agreed order.
 

 Our conclusion that WSD and DDI were in bankruptcy at the time of the transfers disposes of defendants’ second contention regarding the trial court’s failure to charge the jury on the November 10 order. The jury charge accurately reflected the statements contained in the indictment.
 

 Finally, Devine and Parkhill maintain that there was insufficient evidence to sustain their convictions on Counts 2, 4 and 5. Devine additionally asserts that he had nothing to do with the conveyance of the land and that he at all times acted upon the
 
 *617
 
 advice of Parkhill. The jury’s verdict must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it.
 
 Glasser v. United States,
 
 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We find that the record, which consists of ample documentary and live testimony to support the facts described at the outset of this opinion, contains substantial evidence to support the jury’s verdict.
 

 Counts 1 and 3
 

 Devine appeals his conviction on Counts 1 and 3, which allege concealment and transfer of the Cooke County land tracts to WSD on April 28, 1982. He asserts that the evidence adduced at trial was insufficient to show that he “knowingly” violated the bankruptcy law or that he knew for a fact that he was bankrupt on April 28, 1982. When applying the standard set forth in
 
 United States v. Glasser,
 
 the court must make all of the reasonable inferences and credibility choices which will support the jury’s verdict.
 
 United States v. Clark,
 
 741 F.2d 699, 703 (5th Cir.1984). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.
 
 United States v. Bell,
 
 678 F.2d 547, 549 (5th Cir.1982).
 

 The evidence adduced at trial showed that Devine was an experienced businessman; that he was well aware of the filing of the involuntary bankruptcy proceeding and discussed it with his original bankruptcy counsel; that he owned the Cooke County land on the date the involuntary petition was filed; that he conveyed the land to WSD on April 28, 1982, without disclosing to the trustee or the creditors in bankruptcy either his interest therein or the transfer; that his business was in dire financial straits at the time of the conveyance; and that the purpose of the conveyance was to “protect” the land from his creditors. A reasonable trier of fact could find that this evidence establishes beyond a reasonable doubt that Devine knowingly and fraudulently concealed and transferred the Cooke County land. We sustain Devine’s conviction on Counts 1 and 3.
 

 The judgments of the trial court are in all respects AFFIRMED.
 

 [1]
 

 . Because only WSD and DDI figure in this case, we will restrict our subsequent discussion of Devine’s corporate entities to them.
 

 [2]
 

 . It did not exactly conform with official Bankruptcy Form No. 1, nor was it accompanied by the requisite Chapter 11 filing fees, motion to retain counsel and other papers that initiate the usual bankruptcy filing.
 

 [3]
 

 . The relevant portions of 18 U.S.C. § 152 are:
 

 Whoever knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any case under title 11, any property belonging to the estate of a debtor; ...
 

 ******
 

 Whoever, either individually or as an agent or officer of any person or corporation, ... with intent to defeat the bankruptcy law, knowingly and fraudulently transfers or conceals ... any of ... the property of such other person or corporation; ....
 

 18 U.S.C. § 2 provides:
 

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 

 [4]
 

 . On January 11, 1985, the trial court suspended imposition of sentence of imprisonment for Parkhill, fined him $5,000 on each of Counts 2, 4 and 5, and placed him on probation for five years on Counts 2 and 5. The trial court sentenced Devine to concurrent five year terms of imprisonment on Counts 1, 2, 3 and 4, and on Count 5, suspended imposition of sentence of imprisonment, placed him on probation for five years and fined him $5,000.
 

 [5]
 

 . In Count 2 of the jury charge, the relevant language became “On or about the 12th day of November, 1982, and continuously thereafter ... .” The same date, without the term "and continuously thereafter,” introduces Counts 4 and 5 of the jury charge.
 

 [6]
 

 . The cases cited by defendants in support of their constructive amendment/variance argument are inapposite. In
 
 Stirone v. United States,
 
 361 U.S. 212, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), the court reversed a conviction for extortion on the ground that the defendant had been convicted of an
 
 offense
 
 that was not charged in the indictment. Defendants’ other principal authority,
 
 United States v. Miller,
 
 715 F.2d 1360 (9th Cir.1983), modified at 728 F.2d 1269 (9th Cir.1984), vacated a conviction, because, defendants assert, it was predicated on a different scheme from that contained in the indictment. The Supreme Court, however, reversed the
 
 Miller
 
 decision on this point, shortly before defendants here filed their briefs on appeal.
 
 United States v. Miller,
 
 — U.S.-, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985).
 

 [7]
 

 . Fed.R.Civ.P. 54(a) defines “judgment" as "a decree and any order from which an appeal lies.” Such "judgments” are those to which Fed. R.Civ.P. 58 and 79(a) and the corresponding Bankruptcy Rules are addressed.
 

 [8]
 

 . It can also be argued that the Conversion Stipulation order became final after November 1, 1982, when Devine’s entities were in peril of having an involuntary alter ego order entered. See
 
 In re Roney,
 
 139 F.2d 175 (7th Cir.1943). The distinction need not be analyzed for present purposes, because either view of the Conversion Stipulation order demonstrates that it, rather than the follow-up November 10 order, was the "final” one for purposes of entry and, had it been appropriate, review.